NI FUEL COMPANY, INC., f/k/a Nipsco Fuel Company, Inc., individually and on behalf of Bristol Resources Production Company, L.L.C., Plaintiff,

v.

Stephen E. JACKSON, individually and as trustee of the Stephen E. Jackson Trust; Stephen J. Heyman; John Michael Cherry, individually and as trustee of the John Michael Cherry Living Trust, et al., Defendants.

No. 00–CV–385–BU(J).

United States District Court, N.D. Oklahoma.

Dec. 1, 2000.

---

Richard Parker Hix, Richard H. Foster, Doerner Saunders Daniel & Anderson, Tulsa, OK, for plaintiff.

James L. Kincaid, Jeffrey Thomas Hills, Jennifer Golm, Crowe & Dunlevy, Tulsa, OK, Joseph C. Woltz, Terry Joe Barker, Gene G. Boerner, III, Pezold Richey Caruso & Barker, Tulsa, OK, Ceylon Smith Lewis, III, Riggs Abney Neal Turpen Orbison & Lewis, Tulsa, OK, Ronald Eugene Goins, Neal Edward Tomlins, Tomlins & Goins, Tulsa, OK, Lenard M. Parkins, Trey A. Monsour, Verner Liipfert Bernhard McPherson & Hand Chartered, Houston, TX, George Steven Stidham, Stephen R. McNamara, Sneed Lang PC, Tulsa, OK, D. Kevin Ikenberry, Stephen L. Andrew, Stephen L. Andrew and Associates, Tulsa, OK, for defendants.

### *ORDER*

Burrage, District Judge.

On August 18, 2000, United States Magistrate Judge Sam A. Joyner issued a Report and Recommendation, wherein he recommended that this Court either (1) remand this action in its entirety to the District Court for Tulsa County, Oklahoma, or (2) if Bristol Resources Production Company, L.L.C. and Bristol Resources Corporation (collectively "Debtors") so desire, segregate the derivative claims of the Debtors from the remaining claims and transfer the derivative claims to the Southern District of Texas and then remand the remaining claims to the District Court for Tulsa County, Oklahoma. In the Report and Recommendation, Magistrate Judge requested that if the Debtors wanted the derivative claims to be transferred, they were to file the appropriate pleading making such request. On August 31, 2000, the Debtors filed a pleading requesting this Court to transfer the deriv-

ative claims to the Southern District of Texas.

In the Report and Recommendation, Magistrate Judge further recommended that no action be taken on Plaintiff Ni Fuel Company, Inc.'s Motion to File a First Amended Complaint.

Presently before the Court are the Outside Directors/Corporate Defendants' Objection to Magistrate Judge Joyner's Report and Recommendation and the Response of the Bristol Debtors to Report and Recommendation of Magistrate Judge Filed August 18, 2000. The Court has conducted a *de novo* review of the matter.[1] Having done so, the Court concurs with the Report and Recommendation. The Court finds the objections are without merit. The Report and Recommendation is adopted in its entirety.

IT IS THEREFORE ORDERED that

(1) The Report and Recommendation issued by United States Magistrate Judge Sam A. Joyner (Docket Entry # 72) is **AFFIRMED;**

(2) The Motion by Defendant Jackson, et al. to Change Venue (Docket Entry # 4-1) is **DENIED;**

(3) The Motion by Defendant Bristol Resources Production Co., et al. to Transfer Venue to the United States District Court for the Southern District of Texas (Docket Entry # 10-1) is **GRANTED in part** and **DENIED in part;**

(4) The Motion by Defendant Cherry, et al. to Remand to Tulsa County District Court (Docket Entry # 21-1) is **GRANTED;**

(5) The Motion by Plaintiff, Ni Fuel Company, Inc., to Abstain and Re-

mand (Docket Entry # 30-1) is **GRANTED;**

(6) The derivative claims of Bristol Production Company, L.L.C. and Bristol Resources Corporation are transferred to the Southern District of Texas;

(7) The remaining claims are remanded to the District Court for Tulsa County, Oklahoma; and

(8) No action is taken on Plaintiff, Ni Fuel Company Inc.'s Motion to File a First Amended Complaint (Docket Entry # 32-1).

## *REPORT AND RECOMMENDATION*

The Court currently has before it the following motions for consideration in the *Nifuel* action:

(1) Motion by Defendant Jackson, et al. to change venue [Doc. No. 4-1]

(2) Motion by Defendant Bristol Resources Production Co., et al. to Transfer Venue to the U.S.D.C. S.D. Texas [Doc. No. 10-1]

(3) Motion by Defendant Cherry, et al. to Remand to Tulsa County District Court [Doc. No. 21-1]

(4) Motion by Plaintiff Ni Fuel Company, Inc., to abstain and remand [Doc. No. 30-1], and

(5) Motion by Plaintiff Ni Fuel Company, Inc. to Amend Complaint [Doc. No. 32-1].

In addition, the Court has, for consideration, the following motions in the *Cherry* action:

(1) Motion by Defendant El Reno, et al., to Transfer Venue to the U.S.D.C. S.D. Texas [Doc. No. 5-1]

(2) Corrected Motion by Defendant El Reno, et al., to Transfer Venue to

1. In their response to the Bristol Debtors' and Outside Directors/Corporate Defendants' objections, Defendants, John Cherry, Dan Abney, Resources for Sharing & Caring, and Hydrocarbon Analysts argue that the standard of review is "clearly erroneous" on the basis that the subject motions are non-dispositive. The Court, however, declines to address whether the deferential standard of review should apply. Since the Magistrate Judge advised the parties that this Court would conduct a *de novo* review of those portions of the Report and Recommendation to which an objection was made, the Court has conducted such review.

the U.S.D.C. S.D. Texas [Doc. No. 7–1].

(3) Motion by Defendant Bristol Resources Corporation, et al., to Transfer Venue [Doc. No. 13–1].

(4) Motion by Plaintiff to Remand to Tulsa District Court [Doc. No. 18–1].

These motions were referred to the undersigned United States Magistrate Judge for Report and Recommendation.[1] The Court heard oral argument on the above motions on July 19, 2000.

In summary, the Court recommends that both actions be remanded to state court to allow the state court to address the pending state action claims against non-bankrupt entities. The derivative claims of the bankrupt entities belong to the bankrupt debtors. The Court recommends that either (1) both entire causes of action be remanded to state court with the bankrupt debtors having the choice of pursuing or not pursuing the claims belonging to the bankrupt debtors in the state court action, or (2) the derivative claims of the bankrupt debtors be segregated from the remaining causes of action and transferred to the pending bankruptcy proceeding in Texas and the remaining causes of both

actions remanded to state court.[2] The Court further recommends that, at this time, no action be taken on the Motion to File a First Amended Complaint in the *Ni Fuel* action.

Therefore, the Magistrate Judge recommends that, in the *Ni Fuel* action, the motion by Defendant Jackson, et al. to change venue [Doc. No. 4–1], be **DENIED**, the Motion by Defendant Bristol Resources Production Co., et al. to Transfer Venue to the U.S.D.C. S.D. Texas [Doc. No. 10–1] be **DENIED**,[3] the Motion by Defendant Cherry, et al. to Remand to Tulsa County District Court [Doc. No. 21–1] be **GRANTED**, and that the Motion by Plaintiff Ni Fuel Company, Inc., to abstain and remand [Doc. No. 30–1] be **GRANTED**.

In the *Cherry* action, the Magistrate Judge recommends that the Motion by Defendant El Reno to Transfer Venue [Doc. No. 5–1] be **DENIED**, that the Corrected Motion by Defendant El Reno to Transfer Venue [Doc. No. 7–1] be **DENIED**, that the Motion by Defendant Bristol Resources Corporation to Transfer Venue [Doc. No. 13–1] be **DENIED**,[4] and

1. The two actions, *Cherry et al. v. El Reno;* 2000–CV–384–Bu(J), and *Ni Fuel et al. v. Jackson, et al.*, 2000–CV–385–K(J) were removed on the same day. Motions to consolidate the actions have been filed in each pending case. The above-referenced motions were referred to the undersigned for Report and Recommendation. Because of the similarity of the issues currently pending in the two actions with regard to venue, transfer, and remand, oral argument on the motions was combined. However, because the two cases have not been consolidated, the Court has entered separate Reports and Recommendations in each of the two actions.

2. The Magistrate Judge makes this alternative recommendation, because the bankrupt debtors are the "owners" of the derivative claims brought on behalf of the bankrupt debtors. The Court concludes that, therefore, the bankrupt debtors should have their choice of forum with respect to those claims. Clearly the bankrupt debtors would prefer that all claims in both actions be transferred to the bankruptcy court in Texas. This Court concludes

that is not the proper result. This Court is uncertain at this time whether the bankrupt debtors would prefer to have the derivative claims transferred or remanded. However, as noted below, in the section discussing "transfer," the Court has some reservations concerning the propriety of transferring the derivative actions of the bankrupt debtors. The Magistrate Judge concludes that if the bankrupt debtors want the derivative actions transferred to the pending bankruptcy the bankrupt debtors should file an appropriate pleading making such a request which contains the authority permitting such an action. *See*, fn. 41, at 623–624.

3. If the bankrupt debtors prefer the transfer to the Texas Bankruptcy Court of solely the derivative causes of action brought on behalf of the bankrupt debtors, this motion should be granted in part and denied in part.

4. If the bankrupt debtors prefer a transfer to the Texas Bankruptcy Court solely of the derivative causes of action brought on behalf of the bankrupt debtors, this motion should be granted in part and denied in part.

that the Motion by Plaintiff to Remand to Tulsa District Court [Doc. No. 18–1] be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### The Cherry Action

Plaintiffs initially filed a state law action on April 13, 2000, against El Reno, Heyman, Jackson, Bank One, Wells Fargo, and CIBC.[5] Plaintiffs filed a First Amended Petition on April 19, 2000. Plaintiffs added several companies as Plaintiffs, and several as Defendants. Plaintiffs' new petition included bankrupt debtors as both Plaintiffs and Defendants. The cause of action was removed on May 4, 2000, in separate notices of removal, by both the bankrupt entities and the non-bankrupt Defendants. An amended Notice of Removal was filed on May 5, 2000.[6] Plaintiffs generally allege that the Defendants mismanaged and converted corporate assets.

Plaintiffs filed their cause of action on April 13, 2000. The involuntary bankruptcy proceeding[7] was initiated on April 18, 2000, against Bristol Resources Production Company, LLC ("Bristol LLC"), Bristol Resources Corporation ("Bristol Corp."), and Bristol Resources 1994 Acquisition L.P. ("Bristol 1994 LP"). Cherry's initial complaint did not name any bankrupt entities. Cherry's first amended complaint includes derivative claims brought on behalf of the three bankrupt debtors (as Plaintiffs) and includes the three bankrupt debtors as Defendants.

On May 4, 2000, several Defendants filed a Notice of Removal of the state court action. In addition, on May 4, 2000, the three bankrupt entities filed a separate Notice of Removal. The removals were filed pursuant to 28 U.S.C. § 1452 which permits a party to remove any claim or cause of action that a district court has jurisdiction over pursuant to 28 U.S.C. § 1334. On May 4, 2000, several of the Defendants filed a Motion to Transfer Venue to the Southern District of Texas.[8] [Doc. No. 5–1]. On May 10, 2000, the Bristol Debtors filed a Motion to Transfer Venue. [Doc. No. 13–1]. Plaintiffs filed a Motion to remand the action to Tulsa County District Court on May 19, 2000. [Doc. No. 18–1].

### The Ni Fuel Action

Ni Fuel Company ("Ni Fuel") originally filed an action in state court on April 14, 2000.[9] Ni Fuel asserted "individual" claims, and derivative claims on behalf of Bristol Resources Production Company, L.L.C. ("Bristol LLC"). Ni Fuel sued several individuals and entities and asserted that Ni Fuel had been fraudulently induced into investing and contributing to Bristol LLC. Ni Fuel claimed that the Defendants fraudulently diverted more than ten million dollars in assets, monies, or corporate opportunities to themselves.

---

5. Plaintiffs' initial state court complaint did not assert any causes of action against the bankrupt entities. Plaintiffs sued as "Cherry" and "Abney" individually and on behalf of similarly situated shareholders. Plaintiffs therefore initially asserted derivative claims, but the derivative claims were on behalf of El Reno. El Reno was, according to the initial petition, owed money by Bristol Resources, a bankrupt debtor.

6. The Motion was filed to correct a scrivener's error with regard to the case number referenced for the pending state court action.

7. Plaintiffs assert that Bank One begged Plaintiffs not to place the Bristol entities in bankruptcy. Plaintiffs state that they ac-

quiesced in this request and instead filed the state court action. Plaintiffs note that shortly after the Plaintiffs filed their state court action the banks placed the three Bristol entities into bankruptcy, but the bankruptcy was filed in Texas.

8. The Defendants filed a "corrected" motion to transfer venue on May 5, 2000, to correct the case number of the removed state court action. [Doc. No. 7–1].

9. In some briefs, Ni Fuel notes the original date of filing of the Petition in state court as March 31, 2000. The petition, attached to the notice of removal filed in this action is file-stamped April 14, 2000.

On April 18, 2000, several Debtors initiated involuntary bankruptcy proceedings against Bristol LLC, Bristol Resources Corporation ("Bristol Corp."), and Bristol Resources 1994 Acquisition L.P. ("Bristol 1994 LP"). Ni Fuel's state court lawsuit named two of these three entities [10] as Defendants.

On May 4, 2000, several of the Defendants filed a Notice of Removal of the state court action. In addition, on May 4, 2000, the two bankrupt entities [11] filed a separate Notice of Removal. The removals were filed pursuant to 28 U.S.C. § 1452 which permits a party to remove any claim or cause of action that a district court has jurisdiction over pursuant to 28 U.S.C. § 1334.

On June 5, 2000, Plaintiff Ni Fuel filed a Motion requesting that the District Court either remand the action or abstain from it. Plaintiff additionally filed a Motion to file a First Amended Complaint. Plaintiff requested permission to amend its complaint to delete the derivative actions on behalf of the bankrupt entities and any other actions on behalf of or against the bankrupt entities. Defendants object to Plaintiffs requested amendment.

## II. JURISDICTIONAL ISSUES

Plaintiff Cherry asserts that this Court lacks jurisdiction over some of the removed claims. At oral argument, Plaintiff noted that the removal statute provides for removal of claims or causes of action arising under Title 11 or related to Title 11.[12] Plaintiff asserts that not all of the claims in this action arise or relate to Title 11 and that this Court lacks jurisdiction to consider such claims. Plaintiff Ni Fuel does not challenge the proceeding in this Court based on jurisdictional grounds.[13]

■ Section 1334 provides that the district courts have original and exclusive jurisdiction over cases filed pursuant to the Bankruptcy Code. The district courts have original but not exclusive jurisdiction over cases arising under or related to the Bankruptcy Code.

§ 1334 Bankruptcy Cases and Proceedings

**10.** Ni Fuel did not name Bristol Resources 1994 Acquisition Limited Partnership.

**11.** Ni Fuel notes that the bankrupt entities filed a removal notice even though they had not been served in the pending state court action.

**12.** The "bankruptcy" removal statute seems to contemplate that either claims or causes of action may be removed. The statute specifically mentions claims and causes of action. It provides:

> § 1452 Removal of claims related to bankruptcy cases
> (a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.
> (b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this sub-

> section remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals. . . .

28 U.S.C. § 1452. The wording of this statute is in contrast to the wording of the "general" removal statute which provides that a "civil action" may be removed. *See* 28 U.S.C. § 1446(a).

**13.** *Ni Fuel* notes that if jurisdiction exists at the time of removal, the elimination of the "bankruptcy claims" after removal does not divest the federal court of jurisdiction over an action which was properly removed. Cherry's argument is that the claims must be removed separately, and any claims which are not related to the bankruptcy cannot be properly removed. In *Ni Fuel*, the Defendants have suggested that if the debtor entities are deleted from the complaint, complete diversity exists between the parties. This would provide an independent basis for federal jurisdiction. However, as pointed out by the Plaintiff, some of the remaining defendants are Oklahoma residents or entities. Section 1441(b) permits removal only if none of the defendants are a citizen of the State in which the action was brought.

**608**

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334. Therefore, the District Court has jurisdiction for all cases under the Bankruptcy Code, arising under the Bankruptcy Code, or arising in or related to a case under the Bankruptcy Code.

 Generally, cases "under" the Bankruptcy Code are the actual bankruptcy proceeding. *See, e.g., Personette. v. Kennedy,* 204 B.R. 764, 770 (10th Cir. BAP 1997); *Maryland Casualty Co. v. Aselco, Inc.,* 223 B.R. 217 (D.Kan.1998). Neither the *Cherry* nor the *Ni Fuel* actions were filed "under" the Bankruptcy Code, and therefore the federal courts do not have exclusive jurisdiction over these proceedings. 28 U.S.C. § 1334(a).

 "Arising in" a bankruptcy case connotes those types of actions that cannot exist outside of the bankruptcy case, but is not a cause of action created by the Bankruptcy Code. "For example, orders respecting the obtaining of credit, confirmation of a plan, the assumption or rejection of a contract are all matters which could not exist absent the filing of a bankruptcy case, but are not causes of action created by the Bankruptcy Code." [14] *Personette,* 204 B.R. at 771. A "related to" proceeding is one that can exist independently of the

bankruptcy case but the outcome of the proceeding "could conceivably have an effect on the estate being administered in bankruptcy." *Id.* The District Court has original but not exclusive jurisdiction over "arising in" and "related to" types of actions.

 All parties agree that derivative claims brought on behalf of the bankrupt debtors belong to the bankrupt debtors and are properly considered part of the pending bankruptcy. The remaining claims include, in the *Cherry* action, derivative claims on behalf of non-bankrupt entities, and in the *Ni Fuel* action, fraudulent inducement claims and "unique injury" derivative claims. To the extent that the District Court is able to properly separate the Plaintiffs' remaining claims from the derivative claims which belong to the bankrupt debtors, those claims are, at most, "related to" the bankruptcy proceeding,[15] and may be unrelated to the bankruptcy proceeding. In this respect, the Court notes the language of the Court in *Personette.*

[W]e conclude that the State Court action is, at most, a non-core proceeding which is merely "related to" the Debtor's bankruptcy case, but may be a proceeding which is not even "related to" the bankruptcy case and, therefore, is not subject to Bankruptcy Court jurisdiction. Either decision leads to the same result: the Bankruptcy Court must remand the action to State Court. If the State Court action is "related to" the Debtor's bankruptcy case, the Bankruptcy Court, for the reasons discussed below, erred in refusing to abstain from

---

**14.** The "core" proceedings are defined as those which "arise under" and "arise in" the bankruptcy case. Core proceedings do not include those actions that are "related to" a bankruptcy case. *Id.* The main difference between "core" and "non-core" proceedings involves the authority of the bankruptcy judge to issue final orders. In "core" proceedings, a bankruptcy judge can enter a final order. In "non-core" proceedings, a bankruptcy

judge submits findings of facts and proposals of law to the district court.

**15.** Any remaining non-derivative actions are not brought pursuant to Title 11 and therefore are not "under Title 11." In addition, the remaining claims do not appear to qualify as "arising in" a bankruptcy case because the causes of action can exist outside of the bankruptcy action.

hearing it under 28 U.S.C. § 1334(c)(2). On the other hand, if the Bankruptcy Court lacked jurisdiction over the State Court action, removal of the action to the Bankruptcy Court was improper under 28 U.S.C. § 1452(a) thus requiring remand under 28 U.S.C. §§ 1447(c) & 1452(b) . . . .

*Id.* at 770.

 After analyzing the various factors involved in the jurisdictional, remand, transfer and abstention issues, the Magistrate Judge concludes that the action should be remanded to state court.[16] As noted in *Personette,* the claims which are non-derivative and involve non-bankrupt entities are either not related to the bankruptcy and therefore this Court lacks jurisdiction and the action should be remanded, or if related, for the reasons discussed below, the action should be remanded.[17]

## III. WHETHER REMAND OR TRANSFER SHOULD BE DECIDED FIRST

Plaintiffs assert that the Court should first address whether or not the action should be remanded to state court before the Court addresses whether the action should be transferred to the federal district court in Texas. Plaintiff Cherry asserts that because the remand issue is jurisdictional the Court is required to first address remand. The Court agrees that to the extent the issue of remand is a jurisdictional issue that issue must be addressed first. If this Court does not have jurisdiction over the action the Court cannot transfer the action to Texas. Plaintiff Ni Fuel does not challenge the jurisdiction of this Court.

The bankrupt debtors assert that the action must first be transferred to the District Court in Texas, and that that Bankruptcy Court should decide whether or not the action should be remanded to the Oklahoma state court. The bankrupt debtors refer the Court to *Cambridge Co., Inc. v. Cotten,* 138 B.R. 841, 843 (Bankr. E.D.Tex.1992). The bankrupt debtors cite this case as support for their position that the bankruptcy court where the bankruptcy is pending should determine the removal/remand issue.

Removal of bankruptcy cases to the improper district is a recurring problem. When removing a case, parties often err by removing to the district in which the bankruptcy case itself is pending. As noted by the Eleventh Circuit, it is logical that the court where the bankruptcy is pending should determine the removal issue because it is in the best position to determine what impact the removed

**16.** As discussed below, the Magistrate Judge is actually making an "alternative" recommendation. The entire action can be remanded to state court along with the derivative claims of the bankrupt debtors. Or, in the alternative, the derivative claims of the bankrupt debtors can be segregated and transferred to the Bankruptcy Court with the remaining claims remanded to state court.

**17.** Debtors assert that the Court should apply Fifth Circuit law rather than Tenth Circuit law because the current bankruptcy action involving the debtors is pending in the Fifth Circuit. Debtors pose an interesting issue. Arguably, the "property of the estate" should be determined by the law of the Circuit in which the bankruptcy is pending—the Fifth Circuit in this action. Whether or not a court has jurisdiction is generally determined by the law of that court's circuit. Regardless, this Court has looked at the applicable Fifth Circuit law and is not convinced that it would dictate a different result under the specific facts and circumstances of this action. *See, e.g., Feld v. Zale Corp.,* 62 F.3d 746, 753–54 (5th Cir.1995) ("Those cases in which courts have upheld 'related to' jurisdiction over third-party actions do so because the subject of the third-party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate. Conversely, courts have held that a third-party action does not create 'related to' jurisdiction when the asset in question is not property of the estate and the dispute has no effect on the estate. Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy. Moreover, judicial economy alone cannot justify a court's finding jurisdiction over an otherwise unrelated suit.").

case will have on the bankruptcy. *National Developers, Inc. v. CIBA–GEIGY Corp.* (In re National Developers), 803 F.2d 616, 620 (11th Cir.1986). On the other hand, the original choice of forum should be respected. Congress balanced these competing concerns by specifying that the case shall be removed to the district in which the other litigation is pending. A motion to transfer venue to the district in which the bankruptcy case is pending then may be filed.

The case cited by the bankrupt debtors addressed the problem created when a party removes an action to the bankruptcy court where the bankruptcy is pending rather than to the federal court located where the state court action is pending. The court noted that although it would be a better procedure to have the bankruptcy court which is handling the pending bankruptcy address the removal issues, Congress provided that removal should be to the district where the litigation is pending. The case cited by the bankrupt debtors does not fully support the bankrupt debtor's position.[18]

The bankrupt debtors additionally refer the Court to *Consolidated Lewis Investment Corp. v. First Nat'l Bank of Jeffer-son Parish,* 74 B.R. 648, 651 (E.D.La. 1987). *Consolidated Lewis* does, to some degree, support the bankrupt debtors' position. The federal district court transferred the action to the pending bankruptcy proceeding and noted that the bankruptcy court should then determine the remaining issues regarding removal.

As the facts of National Developers are similar to the instant case, this Court is satisfied the proper method for plaintiff's instant action to reach the Middle District of Louisiana is through removal to this Court and subsequent venue transfer to the Middle District of Louisiana. Further, it is clear the "interest of justice" is best served by allowing the Bankruptcy Court for the Middle District the opportunity to review all lawsuits with a nexus to CLIC–LP's bankruptcy. Although this Court is of the opinion that the matters contained in the state court petition are "core" to the bankruptcy proceeding pending in the Middle District of Louisiana and would so rule, the Court is also cognizant of 28 U.S.C. § 157(b)(3) which provides in pertinent part:

> The bankruptcy judge shall determine, on the judge's own motion or on a timely motion of a party, whether a

---

**18.** In addition, *Cambridge* refers to an Eleventh Circuit case, *National Developers, Inc. v. Ciba–Geigy Corp.,* 803 F.2d 616, 620 (11th Cir.1986). The issue in *National Developers* again concerned the removal of a state court action to the bankruptcy court in which the bankruptcy was pending rather than the court in the jurisdiction of the pending litigation.

> As we have stated, section 1478(a) allowed NDI to remove the New York action to the Bankruptcy Court for the Southern District of New York. If NDI wished to have that action litigated in the Bankruptcy Court for the Middle District of Alabama, it should have removed the action to the bankruptcy court in New York and thereafter moved that court to transfer the action to the Middle District of Alabama pursuant to 28 U.S.C. § 1475 (1982). *See In re Nova Real Estate Investment Trust,* 10 B.R. 90 (Bankr. S.D.Fla.1981) (debtor filed an application for removal to the bankruptcy court in the Southern District of Florida and a motion to transfer the case to the Bankruptcy Court for the Eastern District of Virginia, in which Chapter 11 proceedings were being held). NDI elected not to follow this procedure and instead attempted to remove the New York action directly to the bankruptcy court in the Middle District of Alabama. *While it may be true that allowing direct removal of state actions to the bankruptcy court conducting Chapter 11 proceedings would be a more efficient procedure than is the mechanism for removal outlined in 28 U.S.C. § 1478(a), we are obligated to enforce the procedures selected by the Congress.* We conclude that the Bankruptcy Court for the Middle District of Alabama had no jurisdiction over the removed New York action; therefore, the district court erred in denying appellants' motion to remand.

*National Developers,* 803 F.2d at 620. This Eleventh Circuit case is the basis for the favorable language in *Cambridge* which is cited by the bankrupt debtors in their briefs.

proceeding is a core proceeding under this subsection or is proceeding that is otherwise related to a case under Title 11.

Accordingly, the Court finds the question of whether the instant action is a core proceeding must be decided by the Bankruptcy Court for the Middle District of Louisiana. Although plaintiffs have asked this Court to remand this action or in the alternative, abstain, to do so would deprive the bankruptcy court of a § 157(b)(3) determination.

However, even in *Consolidated Lewis,* the removing court first evaluated whether or not the removal was proper.

This matter was removed pursuant to 28 U.S.C. § 1452(a) which provides:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

A district court has original and exclusive jurisdiction of all cases under Title 11 (28 U.S.C. § 1334(a)) and original but not exclusive jurisdiction of all civil proceedings arising under Title 11, and arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). According to plaintiff's own allegations, the bankruptcy of CLIC–LP was caused by the action of defendants herein. Further, the Orleans House Apartment is property listed in CLIC–LP's Schedule A–2 attached to its bankruptcy petition. Accordingly, this Court finds a basis for removal.

In addition, the Court noted that the removed cause of action was obviously a core proceeding.

Some case authority does support the transfer of a removed action to the pending bankruptcy court to permit that bankruptcy court to decide the removal issues. This procedure has the benefit of permitting the bankruptcy court which has the pending bankruptcy to determine whether the asserted claims and causes of action involve or are related to property of the estate.

In addition, some jurisdictions refer the decision of whether or not to transfer or remand to the bankruptcy court in the *removing court's jurisdiction.* This method permits a bankruptcy court, which traditionally determines issues such as "property of the estate," to initially determine such issues, and has the added benefit of permitting the district court to reach a decision on the removal and jurisdictional issues without first having to transfer the action.[19]

 In this action, the Magistrate Judge concludes that the remand issue should be decided before the issues relating to transfer.[20] First, no authority has been cited in this Circuit, and none has been found which requires the Court to transfer this action to the pending bankruptcy proceeding for that Court to determine the remand issues. Second, as noted above, the Court is concerned about several jurisdictional issues. These jurisdictional issues should be addressed before deciding whether the action should be transferred. *See, e.g., Work/Family Directions, Inc. v. Children's Discovery Centers, Inc.,* 223 B.R. 40 (1st Cir. BAP 1998) ("This Court should decide the jurisdictional issues raised by the Defendants. If there is a jurisdiction defect and the par-

---

**19.** This method could have been followed in the pending action. *See, e.g., Work/Family Directions, Inc. v. Children's Discovery Centers, Inc.,* 223 B.R. 40 (1st Cir. BAP 1998). None of the parties suggested this option.

**20.** Because this is a Report and Recommendation, the Magistrate Judge has additionally addressed the transfer issues. With regard to these issues, the Magistrate Judge recommends that this action not be transferred.

ties and the action are not properly before the Court, any action taken by the Court would be void.") *citation omitted.* Third, after analyzing the issues and facts presented by the parties, the Court concludes that for numerous reasons the action should be remanded to state court. Transferring the action to the Texas U.S. District Court for referral by that Court to the Bankruptcy Court, to permit that court to decide whether or not to remand the action to the Oklahoma state court would merely delay what must occur in this action, and would therefore result in a waste of judicial resources.

## IV. REMAND

At first glance this action appears to present a myriad of complex and unique circumstances. A closer look reveals a fairly common scenario where one or more defendants in a multi-party lawsuit is forced into bankruptcy.[21] Factors which make this action appear complicated include the location of the district of the pending bankruptcy,[22] the interrelatedness of several of the named company defendants,[23] the fact that two separate pending lawsuits are involved,[24] and the removal of this action from state court.

### A. Remand Pursuant to the Bankruptcy Removal Statute

The "bankruptcy" removal statute provides:

§ 1452 Removal of claims related to bankruptcy cases

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory

---

**21.** Presently pending in this District are 15 security fraud cases which are all arguably "related to" a bankruptcy case (CFS) which is pending in the Bankruptcy Court in this District. At oral argument the Court was told by Defendants that the currently pending *Ni Fuel* and *Cherry* actions were "significantly different" from the pending 15 "CFS" actions in this District. Counsel for the bankrupt defendants pointed out that the pending CFS actions (1) have no derivative claims, (2) have artfully framed causes of action to insure that no claims against debtors were included, and (3) have asserted no rights of indemnification. The CFS actions were filed *after* the bankruptcy was instituted against CFS. In this action, Ni Fuel and Cherry sued the bankrupt entities before they were placed in bankruptcy. If Ni Fuel or Cherry had sued after the bankruptcy, they could have filed complaints which did not include derivative claims of the bankrupt debtors and which were "more artfully framed." In addition, the "right" of indemnification, in this action is limited. The Court is not convinced that the situation presented by the *NiFuel* and *Cherry* actions is substantially different from the situation presented to this District in the pending CFS actions. Counsel for El Reno additionally expressed concern related to multiple cases proceeding in separate courts. This is exactly what is happening in the CFS actions where the Bankruptcy Court is handling the CFS bankruptcy and the District Courts have retained the security-related litigation.

**22.** The involuntary bankruptcy proceeding was instituted by several creditors of the bankrupt entities in the District Court of Corpus Christi Texas. Plaintiffs in both the *Ni Fuel* and *Cherry* actions suggest that the Defendants are "forum shopping," and are attempting to move these actions to Texas courts because of prior unfavorable judgments against some of the Defendants in previous actions in Oklahoma. Plaintiffs assert that very little property is located in the Corpus Christi District, and that although some of the creditors are Texas entities none of the creditors are located in or near the Corpus Christi District. Defendants maintain that the choice of the forum was the creditors, and that the Corpus Christi Bankruptcy Court has recently enacted statutes favoring the quick processing of bankruptcy claims. Defendants also contend that a substantial portion of the debtors' property is located in the Corpus Christi District.

**23.** Several named Defendants are shareholders in bankrupt and non-bankrupt entities. In addition, the bankrupt companies are accused of owing money to non-bankrupt companies.

**24.** As noted, Ni Fuel has sued several entities and individuals. In addition, one of the individuals sued by Ni Fuel, Cherry, is the Plaintiff in the other case pending in this District which is related to the Ni Fuel action.

power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals. . . .

28 U.S.C. § 1452. The statute contemplates removal of claims when the district court has jurisdiction of the claims under Title 28 § 1334. Section 1334 gives the district courts original and exclusive jurisdiction of all cases under Title 11, and provides original but not exclusive jurisdiction over civil proceedings arising under or related to cases under title 11. 28 U.S.C. § 1334. In addition, 28 U.S.C. § 1452(b) provides that the Court can remand the action to state court on any equitable ground.

Plaintiff Ni Fuel asserts that the removed case should be remanded, pursuant to the statute, on "equitable grounds." Ni Fuel suggests that the Court consider the following factors in considering whether to remand the action: (1) whether a duplication of resources will result; (2) whether the remand will adversely affect the administration of the bankruptcy estate; (3) whether the case involves questions of state law better addressed by a state court; (4) comity considerations, (5) any prejudice to unremoved parties; (6) whether remand lessens the possibility of inconsistent results; and (7) whether the court where the actions originated has greater expertise. Ni Fuel notes that transferring this action which involves non-bankrupt entities and non-bankruptcy claims to a bankruptcy court for trial makes no sense. Ni Fuel suggests that the state law issues are better handled by the state court which routinely addresses them. Ni Fuel additionally notes that the removed parties

will be prejudiced by being forced to participate in a proceeding in Texas when all of their resources are in Tulsa, Oklahoma.

Cherry asserts that the action should be remanded for equitable grounds. Cherry identifies numerous factors which the Court can consider including: (1) forum non conveniens; (2) state court deciding state law; (3) duplication of resources; (4) affect on the bankruptcy estate; (4) comity; (5) prejudice to unremoved parties; (6) inconsistent results; (7) expertise of the courts; (8) relatedness or remoteness to the bankruptcy; (9) forum shopping issues; and (10) presence of nondebtor parties. Cherry points out that no Defendants or Plaintiffs are located in the district where Defendants seek to have this action transferred, but that the majority of the parties and the evidence are in Tulsa, Oklahoma. Cherry suggests that Defendants are forum shopping, and asserts that forcing Plaintiffs to litigate in Corpus Christi, Texas would place an undue burden on them. Plaintiffs claims are state law claims. Cherry claims that the debtor defendants are only technical defendants in the derivative action, and that Cherry's remaining claims are not "core" proceedings. Cherry requests a jury trial. Finally, Cherry notes that, at a minimum, non-debtor non-bankruptcy claims should be remanded, and that judicial economy therefore favors deciding all claims which are not required to be presented in the bankruptcy proceeding in state court.

The Defendants note that due to the interrelatedness of the pending actions with the bankruptcy action, removal and transfer of this action to the pending bankruptcy action in Texas would spare the duplication of judicial resources. Defendants point out that the actions do not involve novel issues of state law. The Defendants also contend that remand of the action would hamper the administration of the debtors estates by forcing the debtors to travel to Oklahoma.

Considering only equitable considerations, the Court recommends that the action[25] be remanded to state court. Some of the causes of action asserted in both *Ni Fuel* and in *Cherry* are not related to the bankruptcy estate. In *Ni Fuel*, Ni Fuel claims that Ni Fuel was fraudulently induced to enter into an investment agreement. Although this cause of action may involve some discovery issues with regard to the bankrupt debtors,[26] whether or not Ni Fuel was fraudulently induced does not involve or impact property of the estate.[27] In *Cherry*, the initial lawsuit filed by Cherry did not name any of the bankrupt debtors and did not involve derivative claims on behalf of the bankrupt debtors.[28] Cherry does assert some derivative claims on behalf of El Reno, which is a non-bankrupt Defendant. Each case clearly involves some claims which are not core and not related to the bankruptcy. Those claims can proceed in state court regardless of the bankruptcy.[29] These claims are based on state law and involve parties and evidence located primarily in Tulsa, Oklahoma. Plaintiffs choice of forum is the state court in Tulsa, Oklahoma. Although some duplication of resources may result, the Court is not convinced that transferring the action to the Corpus Christi District fully conserves judicial resources. To the extent that the Plaintiffs in the actions insist on a jury trial,[30] that trial would occur in the Corpus Christi District Court, not the bankruptcy court.[31] Finally, the Defendants complain about the cost of travel to Oklahoma and participating in discovery. The intention of the Court is to carve out those claims which involve the bankrupt debtors estate, and either transfer those claims to the pending bankruptcy or remand those claims. All remaining claims which are remanded to the state court should not involve the property of the estate. To the extent the remaining parties to the remanded actions want to obtain discovery from the bankrupt defendants, that discovery would be handled by the Bankruptcy Court in Corpus Christi.

The bankrupt debtors argue, with respect to Ni Fuel, that if Ni Fuel is denied leave to amend their complaint[32] Ni Fuel's

25. Generally, the Magistrate Judge refers to "the action." The ultimate recommendation by the Magistrate Judge is that either the entire action be remanded, or that the action be .severed and the derivative actions of the bankrupt debtors be transferred to the pending bankruptcy proceeding in Texas, with the remaining causes of action remanded to state court.

26. Any discovery issues involving the property of the bankruptcy estate would be handled by the Texas Bankruptcy Court.

27. The Defendants assert that this claim involves representations made by the bankrupt debtors. Whether or not this cause of action does raise a claim against the bankrupt debtors involves factual issues. For the purposes of this portion of the argument, the Court assumes that Ni Fuel will establish fraudulent representations by the Defendants in their individual capacities or in capacities not involving the bankrupt entities.

28. *Cherry* filed an amended complaint in state court prior to the bankruptcy filing, adding derivative claims on behalf of the bankrupt entities and adding the bankrupt entities as Defendants.

29. As noted above, the Court has serious jurisdictional concerns about the removal and transfer of these non-bankruptcy claims.

30. The Defendants assert that Oklahoma law does not provide for a jury trial on derivative claims. Plaintiffs' claims are not limited to derivative claims.

31. The parties favoring transfer to the bankruptcy court note that if the action is transferred discovery would all occur in one proceeding. However, even if the actions are remanded, all discovery against the debtors will still be handled by the bankruptcy court. In addition, the parties are free to coordinate discovery, to the extent feasible and possible. The Court is simply not convinced that the needs of the bankrupt entities should dictate all causes of action to which the bankrupt entities might be involved in discovery. Causes of actions concerning non-bankrupt entities and claims which do not impact the bankruptcy estate should proceed in the Plaintiffs' choice of forum.

32. The bankrupt debtors, at oral argument, asserted that allowing the Ni Fuel Plaintiffs to amend their complaint would violate the au-

remaining complaint obviously contains claims which can be asserted solely by the bankrupt debtors and therefore those claims must be asserted in the bankruptcy court, which dictates that this action must be transferred.

Although the Court acknowledges that the current complaint asserts derivative actions on behalf of the bankrupt debtors,[33] the Court is not convinced that transferring the entire remaining action to the pending bankruptcy proceeding is a necessary result. If a state action is pending against numerous defendants and one of the defendants becomes the subject of a bankruptcy, the entire state court action is not stayed. Those claims which involve the bankrupt defendant are stayed, and the pending state court action continues, if it can, against the remaining defendants.

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.... Furthermore, the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor.

*Maritime Electric Company v. United Jersey Bank*, 959 F.2d 1194 (3rd Cir.1991). *See also Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) ("There is nothing in the statute which purports to extend the stay to causes of action against solvent co-defendants of the debtor."). If remanded to state court, any action asserted against the bankrupt defendants would be stayed. If the entire action is remanded to state court, the bankrupt defendants could choose to prosecute the derivative claims in the state court forum. In the alternative, the derivative claims on behalf of the bankrupt debtors could be severed from this action, and those claims could be transferred to the pending Texas bankruptcy court proceeding. Regardless, the simple fact that the complaint contains some causes of action which are asserted against or belong to the bankrupt debtor does not automatically mean that the entire action must be transferred to the pending bankruptcy proceeding. To the extent that actions not involving the bankrupt estate and not involving claims belonging to the bankrupt debtors can be segregated, those actions can continue.

---

tomatic stay because the complaint, as is, partially "belongs" to the bankrupt debtors. To the extent that claims asserted in the state court action below are claims belonging to the bankrupt debtors, the bankrupt debtors argument, that amending the complaint and therefore "disallowing" those claims in state court would affect property of the estate has logical appeal. The Court concludes, however, that this issue does not have to be reached for the Court to determine whether or not the action should be remanded. After remand, any claims belonging to the bankrupt debtors are automatically stayed, and absent unless the bankrupt debtors elect to proceed on those claims, will not be prosecuted. Cherry and Ni Fuel may proceed only on those claims which are not "property of the estate," regardless of whether the complaint is amended. There has been some suggestion that the bankrupt debtors may join Ni Fuel in the prosecution of their action against the remaining Defendants. By remanding to state court, the bankrupt debtors are given the opportunity to pursue their claims in the pending state court action. (The Magistrate Judge is recommending that either the entire action be remanded to state court or the pure derivative claims of the bankrupt debtors be severed from the action and transferred to the Bankruptcy Court in Texas.) In the alternative, the bankrupt debtors may pursue the derivative claims in the pending bankruptcy in Texas.

33. At the time of oral argument none of the parties disputed that the derivative claims of the bankrupt debtors constitute property of the estate.

The bankrupt defendants further argue that because non-debtor defendants will probably assert claims for indemnification against the bankrupt defendants in the pending bankruptcy, any judgment in the state court action would affect the property of the estate. The Court concludes that the potential indemnification claims are, at this point, simply too remote to justify a transfer of all claims to the pending bankruptcy.

First, no claims for indemnification have yet been asserted.[34] Second, if the non-derivative claims are remanded and the state court action permitted to proceed, that state court action will not determine whether or not a right to indemnification exists. The state court action would only determine liability and damages on the claims before the state court. Whether or not a claim for indemnity can be brought against the bankrupt debtors is a decision left for the bankruptcy court. Third, as noted at oral argument by counsel for Ni Fuel, the indemnity language in the governing documents do not guarantee indemnification under the facts of these cases. According to the indemnity language, claims for gross negligence or willful conduct are not indemnified, and the indemnification must be approved by the Board of Directors of the respective bankrupt entity. Counsel for Ni Fuel represented at oral argument that if Ni Fuel is successful in proving its state court cause of action than no right of indemnity under the contractual indemnification provision exists. Therefore, if Ni Fuel's counsel is correct, the property of the estate is not affected. Arguably, Ni Fuel loses in state court the property of the estate is not affected.[35] If Ni Fuel wins in state court no right of indemnity exists. Regardless, the possibility of indemnification posed by the bankrupt debtors is too remote and contingent.

The bankrupt defendants additionally assert that even if the complaint is amended this Court should retain jurisdiction over all of Plaintiff's claims because the claims are "related to" the debtors' pending bankruptcy proceeding. The debtors assert that an action is "related to" the bankruptcy if the outcome could conceivably have an affect on the bankruptcy estate.

■■■■ Initially, the Court notes that "related to" jurisdiction gives the Court jurisdiction if the Court wants to retain the action but also permits the Court to remand an action for any equitable reason. In this action, the Court concludes that the equities favor remand. Further, the Court is not convinced that the remaining causes of action would affect the bankruptcy estate. The causes of action remaining are against non-debtor entities and individuals. The bankrupt debtors argue that if a judgment is rendered in a remanded state court action against an individual, that individual may file an indemnification action in the bankruptcy. As discussed above, this possibility is simply to remote to require a transfer of all causes of actions against non-bankrupt debtors.

## B. Remand: Mandatory and Permissive Abstention

Mandatory and permissive abstention are also provided for in the statutes.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(c)(2) Upon timely motion of a party in a proceeding based upon a State law

---

34. At the time of oral argument on these motions, the parties agreed that no claims for indemnification had yet been filed.

35. The indemnification provides for payment for attorneys fees and other expenses, which would be incurred even if Defendants prevail on the state court claims. However, indemnification must also be approved by the bankrupt debtors as "proper under the circumstances."

claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334.

### 1. Mandatory Abstention

Plaintiffs asserts that mandatory abstention is applicable under the facts of this case. Plaintiffs notes that mandatory abstention has several requirements: (1) a timely filed motion, (2) state law claims, (3) causes of action which do not arise under title 11, (4) which can be timely adjudicated in a different forum. Ni Fuel also notes that if the Court grants its motion to file a First Amended Complaint, any claims which belong to the bankrupt debtors will be deleted and Ni Fuel can proceed solely on Ni Fuel's state causes of action. Plaintiffs assert that all elements for mandatory abstention are present and requests that this Court abstain from this action and remand the action to the state district court.

The Defendants contend that mandatory abstention does not apply. Defendants state that the claims asserted by Ni Fuel and Cherry are core proceedings. In general, "core proceedings" are those arising in or arising under the Bankruptcy laws, but do not include those proceedings which are "related to" the bankruptcy. The claims which the Magistrate Judge recommends be remanded to state court are not core proceedings.

Defendants argue that if Ni Fuel is permitted to file its first amended complaint a

new independent basis for federal jurisdiction exists—diversity. Although the first amended complaint leaves the action with completely diverse Plaintiffs and Defendants, the action would not be removable because some of the remaining Defendants are citizens of the state in which the pending state action was filed. Because some of the Defendants are Oklahoma citizens, the action could not be removed even if complete diversity otherwise exists. *See, infra,* footnote 13, p. 607.

Defendants assert that Plaintiffs' claims cannot be timely adjudicated in the Oklahoma state court. Plaintiff Ni Fuel asserts that one of the reasons underlying the motion to transfer to the Texas bankruptcy Court is the Defendants desire to delay the litigation and possibly prevent Plaintiffs from pursuing the action. Ni Fuel also asserts that the state action would proceed more quickly because the majority of the evidence and witnesses are located in the state court's forum.

Because the Court finds that the principles of permissive abstention favor remand, the Court does not reach a conclusion with respect to the requirements of mandatory abstention. Plaintiffs have a good argument that mandatory abstention applies to these actions. The motion was timely filed; the causes of actions involve state law claims; and the claims do not "arise under" Title 11.[36] Defendants argue Plaintiffs have not established that the state court can timely adjudicate these issues. Defendants assert that the state court adjudication would delay the bankruptcy. These factors are difficult to evaluate. The possibility also exists that allowing the bankruptcy to proceed without these additional issues would permit a more timely adjudication of both actions. Regardless, as discussed below, the Court is persuaded that permissive abstention factors favor remand and therefore de-

---

**36.** "Arising under" Title 11 is discussed above. Generally, this Court concludes that the claims which this Court recommends be remanded to state court do not "arise under" Title 11.

clines to make a separate recommendation with respect to mandatory abstention.

### 2. Permissive Abstention

Ni Fuel asserts that if the Court does not find the elements of mandatory abstention present, that the Court should still abstain after considering the factors of permissive abstention. Some of the factors identified by Ni Fuel include: (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of related proceedings commenced in state court or other nonbankruptcy proceedings; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden or the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity, and (14) the possibility of prejudice to other parties in the action. Ni Fuel notes that if the complaint is amended the debtors would not be parties to the action and the action would have no effect on the administration of the pending bankruptcy case. The remaining claims are state law claims which are not core matters and do not relate to the bankruptcy. Ni Fuel also notes that substantially all of the witnesses, documents, and evidence are in Oklahoma. Ni Fuel requests a jury trial and notes that it will not consent to a jury trial by the bankruptcy court in Texas.

The bankrupt debtors acknowledge that numerous tests exist, but suggest that the primary concern is what is the most economical and expeditious administration of the debtor's estate, which includes a consideration of duplication of judicial resources. The bankrupt debtors focus primarily on the derivative claims. Plaintiffs will not be permitted to proceed on claims which are derivative of the bankrupt debtors.

The Defendants state that the doctrine of abstention does not apply to core proceedings, and because all of the remaining issues are inextricably related to the core claims the bankruptcy court is the proper forum to adjudicate all claims. The Defendants additionally note that no novel questions of state law are involved in these actions.

■■■ A review of the numerous factors outlined by the parties favors permissive abstention. As discussed above, the Court concludes that the derivative actions of the bankrupt debtors belong to the bankrupt debtors. The remaining causes which are remanded to state court should not affect the efficient administration of the bankruptcy estate. The actions being remanded concern issues of state law. The remaining actions involve all non-debtors. As discussed above, the Magistrate Judge recommends remanding the actions to state court for numerous equitable reasons. Those reasons additionally favor the permissive abstention doctrine.

### C. Separating the Claims: What Constitutes Property of the Bankruptcy Estate?

All of the parties agree that the derivative actions on behalf of the bankrupt debtors constitute property of the bankruptcy estate. Both Cherry and Ni Fuel maintain that they have separate causes of action, apart from the debtor derivative actions which do not involve property of the estate and are not against the debtors. The Court, upon reviewing the pleadings, claims, and representations of the parties

concludes that both Plaintiffs do have claims which can properly be maintained in state court and will not affect the bankruptcy estate. The more difficult question is how to identify those claims which can properly be maintained in the state court action.

The solution which the Magistrate Judge proposes is that this District Court should not attempt a piecemeal segregation of appropriate claims for the state court action at this time. The remand to the state court is simple—it involves only those claims which are not "property of the estate," and involves no claims against the bankrupt debtors. Upon remand, if the Defendants believe that the remaining asserted claims do not state a cause of action (because no cause of action is possible absent the presence of the bankrupt debtors or property of the estate), those Defendants should file a motion to dismiss those causes of action in the state court. The state court will then evaluate whether or not the asserted claims raise a cause of action separate and distinct from those causes of action which belong to the bankrupt debtors. Because any action against the bankrupt debtors is stayed, the bankrupt debtors will not participate in the remanded state court action.[37] To the extent that a Defendant believes the Plaintiffs continued pursuit of a cause of action violates the automatic stay, that Defendant may pose that question to the Corpus Christi Bankruptcy Court.

Due to the myriad of issues discussed both at oral argument and in the briefs, whether each individual claim can be segregated from the derivative claims of the bankrupt debtors has not been a primary focus. The Court offers the following analysis of the specific claims asserted by the parties although the Court recognizes that additional development of the issues and law presented by the parties would assist the state court on remand.

### 1. Ni Fuel's Claims

Ni Fuel agrees that counts eight through thirteen of Ni Fuel's complaint are derivative of the bankrupt debtors and Ni Fuel cannot proceed on those claims.

Of the remaining claims, Ni Fuel asserts that counts one, two, three, and seven contain derivative claims of the bankrupt entities in addition to non-derivative state claims. Ni Fuel will not proceed on the derivative claims. Ni Fuel characterizes the remainder of their claims as including fraud in the inducement claims (count four), negligent misrepresentation claims (count five), and state securities fraud claims (count six). Ni Fuel states that these claims are related to the fraud and misconduct perpetrated by Cherry, Heyman, and Jackson inducing Ni Fuel to invest in Bristol L.L.C. Ni Fuel asserts that the remaining causes of action are for breaches of contractual and fiduciary duties by Cherry, Heyman, and Jackson of Bristol L.L.C., and breaches of fiduciary duties to Ni Fuel. These include claims for breach of fiduciary duty (count one), breach of contract (count two), tortious interference (count three), and negligence (count seven).

Ni Fuel asserts that it was fraudulently induced to participate in Bristol LLC. Ni Fuel states that this claim can proceed separate and apart from the bankruptcy. Defendants assert that Ni Fuel's fraudulent inducement claim which asserts conduct occurring prior to the formation of Bristol L.L.C. is essentially a claim against Bristol Corp., which is a bankrupt debtor. Defendants assert that Bristol Corp. courted Ni Fuel as an investment partner and any fraudulent statements were made by Bristol Corp. and its directors, Heyman and Jackson, in their official capacity as directors for Bristol Corp.

Ni Fuel notes that a defense that the remaining Defendants may assert in the state court action is that the remaining

---

**37.** The bankrupt debtors, in their discretion, may choose to pursue the derivative claims brought on behalf of the bankrupt debtors in state court.

Defendants are not liable to Ni Fuel because the claims and actions are essentially against Bristol Corp. Ni Fuel observes that nothing at trial can bind Bristol Corp. because of the stay.

The Court concludes that more information is needed before a decision is made as to whether or not the fraudulent inducement claim is an action alleging fraud against Bristol Corp. rather than the individuals Heyman, Jackson, Cherry. This determination may be possible only after discovery to determine who Heyman, Jackson, and Cherry or others were acting on behalf of when discussing investments with Ni Fuel. The appropriate place for discovery on this asserted cause of action is in state court after the remand. If the state court determines that the cause of action is actually a fraud action against the bankrupt debtor, that cause of action should not continue.

Ni Fuel additionally contends that it can proceed on its "unique injury" derivative actions. Ni Fuel asserts that whether or not their claims can proceed depends upon an interpretation of Delaware law. Ni Fuel acknowledges that the majority of Delaware courts find that actions are derivative, but contends that Ni Fuel would be permitted to pursue a cause of action separate from the derivative one if Ni Fuel can show a contractual duty (breach of an independent duty) or an injury separate and distinct from the others. Ni Fuel notes that certain provisions in the operating agreement provided that the manager could do nothing absent approval by a majority in interest. Ni Fuel contends that since Ni Fuel owned 64% of the venture, the provisions were drafted to require pre-approval by Ni Fuel.

Ni Fuel acknowledges that the majority of Delaware courts are reluctant to find such "unique derivative action" claims. Ni Fuel argues that this is a unique case, however, because Ni Fuel was singled out for mistreatment. Ni Fuel had a 64% ownership interest in the debtor company, but Ni Fuel was a passive investor. Ni Fuel claims specific duties arising out of the operating agreements. Ni Fuel additionally asserts that Ni Fuel was the only investor that did not participate in the wrongful activities.

Defendant contends that the fact that Ni Fuel had a larger percentage interest in the company does not automatically translate into a conclusion that Ni Fuel suffered a unique injury. Defendants' argument has appeal. Ni Fuel argues the unique injury and harm is based on more than just their percentage of ownership however. Ni Fuel's contention that it is the only investor that did not participate in the fraudulent activities could be enough to allege a specific unique injury. In addition, Ni Fuel contends that the provisions were drafted specifically to require pre-approval by Ni Fuel as the majority investor. However, this Court recommends that this issue be left for determination by the state trial court.

### 2. Cherry's claims

Cherry's initial complaint names no bankrupt entities and pleads no causes of action against any bankrupt entities. Cherry amended his complaint to include causes of action against the bankrupt debtors. Cherry, therefore, initially appears to have causes of action which are separate and distinct from the bankruptcy.

The Court has briefly reviewed Cherry's "First Amended Petition" which was initially filed in the state court action on April 19, 2000. Count 1 alleges a cause of action against Heyman and Jackson for their breach of the duty of good faith as officers and directors of El Reno. None of the bankrupt debtors is named. Defendant El Reno asserts that El Reno is primarily a "shell" corporation with no employees and with the sole function of siphoning money. This is not a determination that this Court is prepared to make at this stage of the proceedings. The cause of action, as asserted, raises non-bankruptcy claims against non-debtors. After addi-

tional discovery is completed in the state court action, or with the provision of additional information, Defendant El Reno can file a motion to dismiss or a motion for summary judgment with respect to this count.

Count Two is asserted against Heyman and Jackson for the breach of their fiduciary duties as shareholders of El Reno. Again, no claim appears to be asserted against the bankrupt debtors, and the claim, as asserted, does not appear to involve property of the estate.

Count Three alleges that Heyman and Jackson wrongfully converted property of El Reno. Count Four requests the appointment of a receiver for El Reno. As alleged, the counts do not appear to assert claims against the estate or against the bankrupt debtors.

Count Five requests the imposition of a constructive trust for monies allegedly misappropriated by Bank One and Wells Fargo. Count Six is for conversion. There was some discussion at oral argument that the money appropriated by Bank One and Wells Fargo was money from a bankrupt debtor. The petition notes that the money was taken from "accounts of Bristol." [38] Numerous company names in this action contain the name Bristol. The Court is uncertain whether Plaintiff Cherry is referencing one of the bankrupt debtors. If Cherry is attempting to impose a constructive trust over property which was "taken" by either Bank One or Wells Fargo from one of the bankrupt debtors, that property would constitute property of the estate and that claim should be asserted in the bankruptcy. This same reasoning applies to Counts Six and Count Seven, although Count Seven may additionally raise an independent cause of action.

Counts Eight and Nine assert breaches of duties against Heyman, Jackson, and Womble as shareholders of the "Bristol Defendants." At oral argument the parties discussed the "Bristol Defendants" as including the bankrupt debtors. To the extent that these claims are solely derivative actions of the bankrupt debtors, the actions belong to the bankrupt debtors.

Count Ten asserts that Bank One and Wells Fargo are liable for tortious interference with business relations. Count Twelve is for fraud and economic duress. This would not involve property of the estate because the claim requests damages from Bank One and Wells Fargo for their conduct. To the extent that the claims are not derivative of the bankrupt debtors, Plaintiff could assert this claim.

Count Thirteen requests the imposition of a constructive trust against Chaparral, Bank One, Wells Fargo and GE. Count Fourteen also requests the imposition of a constructive trust. As discussed above, if the money was property of the bankrupt debtors this claim belongs to the bankrupt debtors.

Defendants Chaparral and GECC contend that the causes of action asserted against them are core proceedings. Defendants Chaparral and GECC assert that Plaintiffs seek to recover oil and gas interests that were allegedly transferred to Chaparral and GECC by actual or constructive fraud on the part of the management of the debtor defendants. Defendants state that such a cause of action is a core proceeding and must be pursued in the bankruptcy estate. Defendants additionally contend that no transfer of interests occurred, and to the extent that Plaintiffs contend that the transfer should not take place Plaintiffs are asserting that the debtor defendants should reject their executory contracts with Chaparral and GECC,

---

**38.** Cherry also asserts that the monies did not belong to the Bristol entities but was deposited into one or more of the banks and the banks converted the money. Any monies contained in the account of a bankrupt debtor constitute "property of the estate." The money may have wrongfully been placed into the account, but a claim for the return of those monies should be asserted in bankruptcy court.

and that those claims belong in the bankruptcy court.

■ To the extent that the District Courts remand any portions of claims against these parties which may involve "property of the estate," the bankrupt debtors do not have to defend any such actions. However, the bankruptcy laws are not enacted to protect non-debtors from litigation.

## IV. TRANSFER

Defendants and the bankrupt debtors all urge this Court to transfer the entire pending action to the Corpus Christi Bankruptcy Court. The applicable statutes are 28 U.S.C. §§ 1404 and 1412. Title 28 § 1412 provides:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412. Title 28 U.S.C. § 1404, the general venue statute, provides for a transfer of venue "for the convenience of parties and witnesses ... to any other district or division where it might have been brought." 28 U.S.C. § 1404.

The Defendants encourage transfer to the District Court of Corpus Christi, asserting that the convenience of the parties and the interests of justice dictate that the action should be heard in Texas. Defendants assert that venue should be decided pursuant to 28 U.S.C. § 1412.

The bankrupt debtors also urge that the Court address venue under 28 U.S.C. § 1412. The bankrupt debtors acknowledge that some courts apply 28 U.S.C.

§ 1404(a) in determining transfer issues, but the bankrupt debtors suggest that the majority of the courts apply 28 U.S.C. § 1412 to cases removed pursuant to bankruptcy issues. The bankrupt debtors additionally assert that whether or not the Court applies § 1404(a) or § 1412, the outcome is the same, and the actions should be transferred to Texas.

Plaintiffs both urge the Court to apply the general venue provision, § 1404 to the proceeding. Plaintiffs note the language of § 1412 includes only those cases arising in or under Title 11, and does not include actions "related to" Title 11. Plaintiffs characterize the non-derivative actions as, at most, "related to" Title 11 and urge the Court to apply § 1404. Plaintiffs additionally note that if § 1404 is applied, transfer should not occur because personal jurisdiction over all of the Plaintiffs and Defendants cannot occur in the Bankruptcy Court in Texas.

■ The Court and the parties have located no applicable Tenth Circuit precedent. Several courts in the nation have addressed the issue. Some have decided that § 1404 applies to "related to" Title 11 cases, and some have applied § 1412 to "related to" cases. As discussed above, because the Magistrate Judge is recommending that the action be remanded to state court, the issue of transfer, although to some degree inextricably intertwined in the issue of remand, does not need to be reached. However, the Court is persuaded by the reasoning of the District Court in *Searcy v. Knostman*, 155 B.R. 699 (S.D.Miss.1993),[39] that § 1404 applies to "related to" proceedings.

---

**39.** The debtors refer the Court to *In re Bruno's, Inc.*, 227 B.R. 311, 323 (Bankr.N.D.Ala. 1998). In *In re Bruno's*, the Court noted its reasons for applying § 1412.

> This Court agrees that the appropriate authority for transfer of bankruptcy proceedings is 28 U.S.C. § 1412 for two reasons. First, the plain language of § 1412 states that it applies to a change of venue concerning a case or proceeding under Title 11 (the Bankruptcy Code), while the language

in § 1404(a) refers only to a "civil action" and fails to mention language peculiar to bankruptcy jurisdiction and venue statutes, including "case," "proceeding" and "Title 11." Second, Rule 7087 of the Federal Rules of Bankruptcy Procedure which governs adversary proceedings of state actions removed to bankruptcy court pursuant to 28 U.S.C. § 1452, references 28 U.S.C. § 1412, not § 1404(a). Accordingly, this Court finds that 28 U.S.C. § 1412 is the

At least four lower federal courts have held that a "related to" proceeding is not one that is "under" Title 11 and, thus, that § 1412 would not control a transfer issue in such cases. *See Murray, Wilson and Hunter v. Jersey Boats, Inc., et al.,* No. 91–7733, 1992 WL 37516, at *3, 1992 U.S. Dist. LEXIS 1986, at *9 (E.D.Pa. Feb. 21, 1992); *In re Thomson McKinnon Securities, Inc.,* 126 B.R. 833, 834–35 (Bankr.S.D.N.Y.1991); *Goldberg Holding Corp. v. NEP Productions, Inc.,* 93 B.R. 33, 34 (S.D.N.Y. 1988); *United States for the Use of Metal Trims Industries, Inc. v. Klein Construction Co., et al.,* No. 83 C 2146, Slip Opinion, 1985 WL 3020 (Oct. 9, 1985). These courts instead opted to proceed under 28 U.S.C. § 1404(a), the general venue statute to the issue of transfer. The reasoning of these decisions is convincing. Specifically, the above courts point out that the predecessor to § 1412, 28 U.S.C. § 1475, stated:

> A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

The phrase "related to such a case" is deleted from the current rendition of § 1412 which, according to these cases, evidences an intent by Congress to follow the pronouncements of the United States Supreme Court in the Marathon case to limit the authority of an Article I bankruptcy court. *See, e.g., Jersey Boats,* 1992 WL 37516, at *3, 1992 U.S. Dist. LEXIS 1986, at *8–9. This court concurs with this reasoning and this perspective on the statute. Hence, this court holds that the plain meaning of the

omission in § 1412 supports the conclusion that § 1412 no longer applies to "related to" proceedings. This court further agrees with the aforementioned authorities that disputes relative to change of venue in "related to" proceedings should be governed by 28 U.S.C. § 1404(a), the general change of venue provision for all civil actions. One can easily discern that the two statutes are strikingly similar. Indeed, at least one court has stated that there is little reason for distinguishing between the two statutes.

The "bankruptcy venue" statute permits a court to transfer any case or proceeding "under Title 11." Interpreting this statute to be limited to cases arising under or arising in Title 11 means that the analysis with respect to § 1412 is consistent with that of § 1334(b).[40] In addition, as discussed by the *Searcy* court, this position is more consistent with the legislative history of the statute. If the Court interprets § 1412 as not including "related to" causes of action (because the non-derivative non-debtor claims are "related to" causes of action), venue in this proceeding would be determined pursuant to the general venue statute, § 1404.

The main difference between § 1404 and § 1412 is that § 1404 provides that the action may be transferred "to any other district or division where it might have been brought." As applied to the current causes of action, transfer pursuant to § 1404 is probably unlikely because personal jurisdiction cannot be obtained with respect to each of the parties.

■■■ The Court finds that application of § 1404 to this action dictates that the action not be transferred.[41] However, even

---

applicable change of venue statute for determining whether a transfer of proceedings related to the bankruptcy case is appropriate.

This Court is more persuaded by the reasoning of the *Searcy* court.

**40.** "Arising in," "arising under," and "related to" § 1334 is discussed above at pp. 607–609.

**41.** Although not asserted by the parties, the Court has venue concerns regarding the transfer of the derivative claims of the bankrupt debtors. All of the parties agree that the derivative claims belong to the bankrupt debtors. If the derivative claims are interpreted as "related to" claims, the claims can be transferred only under § 1404. If the bank-

if the Court were to apply § 1412, the Court is not convinced that the causes of action should be transferred to the Texas District.

Defendants suggest that transfer would promote the economics of the administration of the estate. The Court has concluded that the derivative actions of the bankrupt debtors belong to the bankrupt debtors and cannot be prosecuted by the Plaintiffs in this action. The remaining claims may involve issues of fact and law common to claims which are a part of the bankruptcy estate, and the remaining claims may require discovery of the bankrupt debtors. This factor alone does not require that the claims be transferred to the Texas district. In addition, the transfer of the remaining claims could actually make the bankruptcy action more complicated. These causes of actions involve claims and parties which are not part of the bankruptcy, and attempting to force the actions into the pending bankruptcy could additionally and needlessly complicate the bankruptcy.

Defendants assert that the presumption is in favor of the home court and state that that court is the Bankruptcy Court. Plaintiffs assert that the home court is the court in which the action was first filed, and that is the state court.

Defendants argue that judicial efficiency dictates transfer to Texas. This Court is confident in the abilities of the Bankruptcy Judge in Corpus Christi.[42] In addition, the Court notes that, to some degree, a remand of these actions to state court may result in two courts hearing and deciding some of the same issues.

Defendants suggest that one factor for consideration is the ability of the parties to receive a fair trial. Defendants state that either court will provide a fair trial. Plaintiffs do suggest, however, that due to the location of the Texas court, Plaintiffs will be unable, financially, to fully participate in an action in the Texas court.

Defendants note that although a state's interest in deciding its own controversies should be considered, the Texas court can protect the interests of Oklahoma. Certainly a state's interest in deciding its own controversies weighs in favor of the Oklahoma forum. Defendants additionally note the constructive trust action by Plaintiffs. Plaintiffs have agreed that they cannot pursue this constructive trust action in state court or outside of the bankruptcy because it involves "property of the estate."

Defendants suggest that the enforceability of the judgment weighs in favor of a transfer to Texas. Defendants note that "any judgment rendered against the Debtors or any constructive trust imposed on their property...." must be enforced in Texas. As this Court views the remaining action, however, no judgment against the bankrupt debtors or their property will be permitted outside of the bankruptcy court proceeding.

Defendants note that one factor for consideration is the Plaintiffs choice of forum. Defendants observe that the Court should additionally consider the "convenience of the parties," and that this includes the location of the Plaintiffs and Defendants, the convenience of the witnesses, the availability of subpoena power, and expenses related to obtaining witnesses. The ma-

---

ruptcy debtors could have brought the derivative claims in the pending bankruptcy against the named Defendants, § 1404 could provide for the transfer of the derivative causes of action. The Court has not researched these issues but requests that if the bankrupt debtors want the derivative claims transferred, the debtors should file an appropriate pleading requesting the transfer which contains the authority permitting the transfer.

42. Plaintiffs point out that the issues involve state law issues. Plaintiffs are correct that numerous state law issues are involved. However, this Court does not consider the "complexity" of the state law issues as dictating the result in this action.

jority of the parties and witnesses appear to be located in Tulsa county. Defendants note that the banks and several Defendants are located in Texas. As discussed at oral argument, the Defendants do not appear to be located in the county where the bankruptcy is currently pending. Plaintiffs suggest that it would be easier for the Defendants to travel to Tulsa than to the Corpus Christi district.

Whether transfer is analyzed under § 1404 or § 1412, the Magistrate Judge recommends against transferring the remaining non-derivative [43] actions to the pending Texas bankruptcy.

**RECOMMENDATION**

The Magistrate Judge recommends that the District Court remand all claims which do not belong to the bankrupt debtors.[44] With regard to the derivative claims that belong to the bankrupt debtors, the Magistrate Judge recommends that those causes of action be either (1) transferred to the pending bankruptcy proceeding in Texas,[45] or (2) remanded to state court. This alternative recommendation is made because at the time of oral argument the bankrupt debtors wanted all causes of actions transferred to the pending bankruptcy proceeding. In addition, some suggestion was made by the parties that the bankrupt debtors might agree to prosecute some claims in state court.[46] Consequently, the

Court recommends that if the bankrupt debtors want the derivative actions remanded to state court, the entire action should be remanded. If the bankrupt debtors want the derivative claims of the bankrupt debtors transferred while the remaining claims are remanded, the Magistrate Judge recommends that those claims be transferred.[47]

**OBJECTIONS**

Within 10 days of being served with a copy of this Report and Recommendation, a party may file with the Clerk of this Court specific, written objections to this Report and Recommendation. If a timely objection is filed, the District Judge assigned to this case will conduct a *de novo* review of those portions of this Report and Recommendation to which objection is made, and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. If no timely objection is filed, the District Judge may adopt this Report and Recommendation without any review. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). Failure to file timely objections to this Report and Recommendation may bar the party failing to object from appealing to the Court of Appeals any of the factual or legal findings in this Report and Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88

---

**43.** Plaintiff Cherry has asserted some derivative actions on behalf of non-bankrupt entities. Those derivative actions properly remain a part of the action that the Magistrate Judge recommends be remanded to state court.

**44.** Specifically, the derivative actions of the bankrupt debtors belong to the bankrupt debtors and the remaining causes of action should be remanded. In addition, as discussed in the Report and Recommendation, the Magistrate Judge has some reservations with regard to the transferability of these remaining issues. Thus far no party has suggested that the derivative actions of the bankrupt debtors should not be transferred.

**45.** The Magistrate Judge recommends that the derivative claims be transferred only if the

bankrupt debtors file a pleading requesting that the claims be transferred, and only if the transfer is permissible pursuant to the applicable statutes. This specific issue has not yet been fully briefed by the parties.

**46.** Ni Fuel filed a motion to change the date of the hearing suggesting that additional time might permit Ni Fuel and the bankrupt debtors to reach an agreement regarding these issues.

**47.** The entire action can be remanded to state court. The Magistrate Judge recommends that debtors be given an opportunity to transfer the derivative claims of the bankrupt debtors in an effort to assist the debtors. The easier course of action for this Court is to simply remand the entire action to state court.

L.Ed.2d 435 (1985); *Haney v. Addison*, 175 F.3d 1217 (10th Cir.1999); *Talley v. Hesse*, 91 F.3d 1411 (10th Cir.1996); *United States v. One Parcel of Real Property*, 73 F.3d 1057 (10th Cir.1996); and *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

JOYNER, United States Magistrate Judge.

Dated this 18 day of August 2000.