2012 WY 79

KM UPSTREAM, LLC, a Delaware limited liability company, Appellant (Defendant),

v.

ELKHORN CONSTRUCTION, INC., a Wyoming corporation, Appellee (Plaintiff).

Elkhorn Construction, Inc., a Wyoming corporation, Appellant (Plaintiff),

v.

KM Upstream, LLC, a Delaware limited liability company, Appellee (Defendant).

Nos. S–11–0185, S–11–0207, S–11–0186, S–11–0208.

Supreme Court of Wyoming.

June 6, 2012.

case.[1] KM appealed, arguing that summary judgment was improper because of the existence of genuine issues of material fact, and because the district court did not have jurisdiction to proceed with the case, given the automatic stay arising in the bankruptcy proceedings of Newpoint Gas, LP (Newpoint, LP).[2] KM also asserts that the district court could not proceed in the absence of Newpoint because Newpoint, the contractor, is an indispensable party. Elkhorn cross-appealed, contending that the district court should have adjudicated its claimed oil and gas lien, in addition to the mechanic's lien, thereby making attorney's fees and costs available.

[¶2] Because of a W.R.C.P. 54(b) certification issue, the appeal and the cross-appeal were each filed twice. The resulting four docketed cases, as referenced in the heading of this opinion, have been joined for briefing, argument, and opinion. We affirm in part, reverse in part, and remand to the district court for further proceedings consistent herewith.

Representing KM Upstream, LLC: Drake D. Hill, Rebecca H. Noecker, and Michael L. Beatty of Beatty, Wozniak & Reese, PC. Argument by Ms. Noecker.

Representing Elkhorn Construction, Inc.: Mark W. Harris of Harris Law Firm, PC; Scott D. Cessar and Audrey K. Kwak of Eckert Seamans Cherin & Mellott, LLC. Argument by Mr. Cessar.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶1] The district court granted summary judgment to Elkhorn Construction, Inc. (Elkhorn), a subcontractor, on its mechanic's lien claim against KM Upstream, LLC (KM), the owner of an amine plant, the construction of which plant underlies all the issues of this

## ISSUES

[¶3] 1. Did the automatic stay in Newpoint, LP's bankruptcy deprive the district court of jurisdiction to enter summary judgment in this case?

2. Did the district court err in granting summary judgment in the absence from this case of Newpoint, an indispensable party?

3. Did the district court err in granting summary judgment in the absence from this case of HFG Engineering US, Inc. (HFG), an alleged joint venturer with Newpoint, and therefore an indispensable party?

4. Did the district court err in finding no genuine issues of material fact?

5. Did the district court err in awarding summary judgment in an amount exceeding the contract price where Wyo.

---

1. An amine plant treats or "sweetens" natural gas by removing certain noxious compounds.

2. A seemingly collateral issue that became a central issue arose out of the fact that Newpoint Gas Services, Inc. and Newpoint Gas, LP are affiliated companies, or the latter may be the successor of the former, leaving at least an alleged uncertainty as to which, if either, is the appropriate party in this case. We will refer to these entities as Newpoint, Inc. and Newpoint, LP, or sometimes, simply as Newpoint.

Stat. Ann. § 29–2–101(b) (LexisNexis 2007) requires that the work or materials establishing a mechanic's lien be furnished under a contract?

6. Did Elkhorn's Lien Statement· set forth both a mechanic's lien claim and an oil and gas lien claim?

7. Did the district court err in concluding that Elkhorn's damages were liquidated and awarding pre-judgment interest?

8. Did the district court err in finding that Elkhorn conceded that $181,369 of its claim was not valid, and by subtracting that amount from Elkhorn's judgment?

9. Did the district court err in holding that the allowed foreclosure of the mechanic's lien "mooted" the necessity for the district court to address Elkhorn's separate motion for summary judgment on the oil and gas lien claim?

### FACTS

[¶ 4] On July 6, 2007, KM and Newpoint, Inc. entered into a contract whereby the latter would construct for the former "an amine plant at West Frenchie Draw, Fremont County, Wyoming[.]" KM agreed to pay Newpoint, Inc. $15,664,490 as a fixed cost, as might be amended by written change order. Eventually, two written change orders increased the price to $15,695,855.30. KM paid Newpoint, Inc. $15,524,659.21, and it paid $219,256.72 to other contractors to finish the job.

[¶ 5] Newpoint, Inc. subcontracted with Elkhorn to build the foundation and to interconnect certain "skids." The Time and Material Contract between Newpoint, Inc. and Elkhorn contained a "target price" of $5,700,000, which target price was not to be increased but by Newport, Inc., in writing. Despite the fact that this target price was never formally increased in writing, and despite the fact that no additional change orders were presented, Newpoint, Inc. approved Elkhorn's invoices in the total amount of $9,910,086.96.

[¶ 6] On March 6, 2009, Elkhorn filed a Lien Statement with the Fremont County Clerk, reading in pertinent part as follows:

**NOTICE** is hereby given that pursuant to and in accordance with Section 29–1–301 et seq. and Section 29–3–101 et seq., Wyoming Statutes, 2007, Elkhorn Construction, Inc., whose mailing address is P.O. Box 809, Evanston, Wyoming 82931, has and claims a lien against the **leasehold interest and improvements** hereinafter described and **all production of oil, gas, ore and minerals in solid form, or proceeds therefrom** in the amount of $4,880,588.83, plus interest, late charges, attorney's fees and costs from January 16, 2009, for materials furnished and delivered and labor supplied for the improvement of said property by Elkhorn Construction, Inc.

An itemized list setting forth and describing the materials delivered and labor supplied by Elkhorn Construction, Inc., is attached hereto as Appendix "A" and by this reference hereby made a part hereof.

That the materials and labor were delivered and performed for and to Newpoint Gas, LP at its special instance and request and upon its promise to pay Elkhorn Construction, Inc. the reasonable value therefore. A copy of the contract is attached as Appendix "B."

Elkhorn Construction, Inc. furnished and delivered such labor and materials aforesaid during the period of March 18, 2008 to January 16, 2009.

The aforesaid materials and labor were furnished to Newpoint Gas, LP for the improvement of the West Frenchie Draw Amine Gas Treating Plant, on real property situate in Fremont County, Wyoming, and being more particularly described as follows:

. . . .

The foregoing described real property is owned by the State of Wyoming, whose address is indicated above.

(Emphasis in original.) Attached to the Lien Statement were 1,260 pages of invoices and labor charges for amounts claimed by Elkhorn.

[¶ 7] On March 23, 2009, Elkhorn filed a complaint against KM, alleging three causes of action: foreclosure of the lien as a mechanic's lien under Wyo. Stat. Ann. § 29–2–

101 (LexisNexis 2007), foreclosure of the lien as an oil and gas lien under Wyo. Stat. Ann. § 29–3–103 (LexisNexis 2007), and unjust enrichment/quantum meruit.[3] KM responded with a motion to add Newpoint, Inc. as "a party needed for just adjudication of this dispute under W.R.C.P. 19." That motion was followed by a similar motion to join Newpoint, Inc. under W.R.C.P. 12(b)(7) and W.R.C.P. 19(a). Eventually, KM and Elkhorn stipulated that Newpoint, Inc. be joined as a party defendant, and an order to that effect was entered on November 24, 2009. Thereafter, Elkhorn filed its Second Amended Complaint, alleging the same three causes of action, but naming "Newpoint Gas, LP a/k/a Newpoint Gas Services, Inc." as a defendant. The Second Amended Complaint was re-filed with a corrected caption, naming Newpoint Gas Services, Inc. as the additional defendant.

[¶ 8] KM filed an answer in response to the Second Amended Complaint, denying that Elkhorn was entitled to recover any amounts under any of its causes of action, and presenting numerous affirmative defenses. Newpoint, Inc. filed an answer, in pertinent part denying that Elkhorn had provided any material or performed any labor for which it had not been paid. Newpoint, Inc. also counterclaimed against Elkhorn, claiming that Elkhorn had breached its contract with Newpoint, Inc. by seeking compensation beyond the contract's target price, without prior notice as required by the contract. Newpoint, Inc. also sought a declaration that nothing further was owed to Elkhorn under the contract. Newpoint, Inc. later filed an amendment to its answer and counterclaim, limiting the counterclaim to a request for a declaratory judgment as to what amounts Elkhorn might be owed, and adding a cross-claim against KM, with seven claims for relief: misrepresentation, estoppel/waiver, breach of the implied covenant to provide timely and adequate plans, breach of contract, indemnity, breach of the covenant of good faith and fair dealing, and unjust enrichment.

[¶ 9] KM answered Newpoint, Inc.'s cross-claim, and filed a responsive cross-claim against Newpoint, Inc., in which it alleged breach of contract as follows: creation of the Elkhorn lien, failure to manage contract expenses, failure to pay or discharge lien, failure to provide notice of liens, failure to acquire subcontractor's waiver of lien rights, failure to assure consistent subcontract, failure to indemnify, and breach of the duty of good faith and fair dealing. Finally, KM sought a declaration as to Newpoint, Inc.'s obligations to defend against and hold KM harmless from the Elkhorn claims, or other claims arising by virtue of contract or common law.

[¶ 10] After replying to Newpoint, Inc.'s amended counterclaim, Elkhorn filed an amendment to its Second Amended Complaint in which it added a breach of contract claim against Newpoint, Inc., seeking $4,880,588.83 for amounts that it had not been paid under the project. Subsequently, Newpoint, Inc. answered the amendment to Elkhorn's Second Amended Complaint, and amended its cross-claim against KM by adding allegations of negligent retention of contractor, and indemnity under a specific section of the contract. KM then answered Newpoint, Inc.'s cross-claim, and amended its cross-claim against Newpoint, Inc. by alleging the following causes of action: breach of contract—joint venture obligations, promissory estoppel, equitable estoppel, breach of contract, breach of contract—creation of the Elkhorn lien, breach of contract—demand in excess of contract price, breach of contract—failure to pay or discharge liens, breach of contract—failure to provide notice of liens, breach of contract—failure to acquire subcontractor's waiver of lien rights, breach of contract—failure to assure consistent subcontract, breach of contract—obligation to defend and indemnify, breach of statutory duty to defend and pay, breach of the duty of good faith and fair dealing, and a declaratory judgment.

[¶ 11] The next series of filings in the district court began with KM's motion to join

---

**3.** The lien statutes have been amended since these proceedings began, so we will refer to the version found in the 2007 statutes.

HFG as a party defendant. In its motion, KM asserted that all claims arising out of the same transaction should be adjudicated in one litigation, that Wyoming's lien statutes allow the owner to require the joinder of the project contractor because of the contractor's statutory duty to defend against the lien, that HFG and Newpoint were joint venturers, making HFG liable for project obligations, and that complete relief was not available absent joinder of HFG. Elkhorn opposed KM's motion on a number of grounds. First, Elkhorn pointed out that the case was nearly two years old and was set for trial. Second, Elkhorn complained that, despite KM's knowledge from the outset of HFG's role in the matter, no discovery had been conducted in that regard. Third, Elkhorn contended that, with its belated motion, KM was advancing an entirely new legal theory—that is, that Newpoint and HFG were joint venturers. And finally, Elkhorn pointed out that the arbitration clause in the contract between KM and HFG would compel arbitration of any issues between them.[4]

[¶ 12] On March 28, 2011, Elkhorn filed a motion for summary judgment. A similar motion from KM followed on April 4, 2011. Both motions were supported by hundreds of pages of affidavits, deposition transcripts, and other exhibits. On May 3, 2011, KM filed a motion seeking partial summary judgment against Newpoint, Inc., on four of the causes of action in its cross-claim. Before any of these motions could be heard, KM notified the district court that Newpoint, LP had filed in Oklahoma a voluntary petition seeking bankruptcy protection, and seeking the district court's guidance on application of the bankruptcy court's automatic stay. Two days later, KM filed an amended notice of the bankruptcy, this time advising the court that "Newpoint Gas, LP, allegedly a/k/a Newpoint Gas Services, Inc." had taken bankruptcy. Elkhorn opposed recognition or application of the automatic stay arising in the Oklahoma bankruptcy in this case, arguing that its contract was with Newpoint, Inc., which company was not in bankruptcy, rather than with Newpoint, LP, the company in bankruptcy. Elkhorn argued further that, not only does a bankruptcy stay not stay proceedings against solvent companies affiliated with the company taking bankruptcy, neither does it stay proceedings against co-defendants of the company taking bankruptcy.

[¶ 13] The district court heard the pending motions in regard to the bankruptcy stay, as well as the summary judgment motions, on June 17, 2011. Ruling from the bench, the district court granted Elkhorn's motion for summary judgment to allow foreclosure on the mechanic's lien, but indicated that it would stay the balance of the proceedings as such related to Newpoint, Inc. and Newpoint, LP. On July 1, 2011, an Order Staying Case and an Order Granting Plaintiff's Motion for Summary Judgment on Foreclosure of Mechanic's Lien were entered. The details of those orders will be discussed as pertinent below.

## DISCUSSION

### Did the automatic stay in Newpoint, LP's bankruptcy deprive the district court of jurisdiction to enter summary judgment in this case?

[¶ 14] With little fanfare, we will dispose of KM's contention that the federal bankruptcy code's automatic stay, found at 11 U.S.C. § 362(a) (2006 & Supp. IV 2010), effective in Newpoint, LP's Oklahoma bankruptcy, should have stayed the entire case facing the district court in Wyoming. Whether we review the district court's decision *de novo*, as argued by KM, or for an abuse of discretion, as argued by Elkhorn, we come to the same conclusion.[5] The automatic stay does not stay proceedings against solvent co-defendants, such as KM, of an insolvent debtor, such as Newpoint, LP. *See, e.g., Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1329–30 (10th Cir.1984); *Diamond Hill Inv. Co. v. Shelden,* 767 P.2d 1005, 1010 (Wyo.1989); *Hamel v. Am. Continental*

---

4. We have detailed all these claims, cross-claims, and counterclaims to place the eventual stay order and order granting summary judgment in context.

5. We need not resolve at this time which standard of review is appropriate.

*Corp.,* 713 P.2d 1152, 1154 (Wyo.1986); 2 Howard J. Steinberg, *Bankruptcy Litigation* § 12:13 (2d ed. 2008); 9B Am.Jur.2d *Bankruptcy* § 1747 (2006).

[¶ 15] It must be remembered that, in the instant case, the district court did stay the proceedings in regard to any claims, cross-claims, or counterclaims that could have resulted in a judgment against Newpoint, allowing only the summary judgment on Elkhorn's *in rem* mechanic's lien foreclosure to proceed. *See True v. Hi–Plains Elevator Mach., Inc.,* 577 P.2d 991, 1004 (Wyo.1978) and *Mawson–Peterson Lumber Co. v. Sprinkle,* 59 Wyo. 334, 140 P.2d 588, 591–92 (Wyo.1943). Because the property subject to the lien foreclosure was the property of KM, rather than the property of Newpoint, the entity in bankruptcy, the *in rem* proceeding to foreclose the lien was not subject to the automatic stay. *Fortier,* 747 F.2d at 1330.

It should be self-evident from the clear language of 11 U.S.C. § 362 (1983) that the automatic stay granted petitioners in bankruptcy is directed at only claims against the "debtor," the "property of the debtor," and the "estate" and not acts against others. This is confirmed by courts working regularly in bankruptcy matters and knowledgeable in the field.

The automatic stay provisions apply to proceedings or acts against the debtor, the debtor's property, and the property of the estate, but do not apply to acts against property which is neither the debtor's nor the estate's. The automatic stay does not operate to prohibit action against a co-debtor nor affect the liability of a co-debtor not in bankruptcy. Something more than filing a bankruptcy petition must be shown in order that proceedings be stayed against nonbankrupt parties. Where a pending action is not interfering with a bankruptcy, an automatic stay of such action would in no way foster the Bankruptcy Code's policy of preserving the debtor's insolvent estate for the benefit of creditors.

*Hamel,* 713 P.2d at 1154 (internal citations omitted). The bankruptcy stay in Oklahoma did not deprive the district court of jurisdiction to enter summary judgment in the instant case.

### Did the district court err in granting summary judgment in the absence from this case of Newpoint, an indispensable party?

[¶ 16] District court rulings on the joinder of parties, including allegedly indispensable parties, are reviewed for an abuse of discretion. *Grove v. Pfister,* 2005 WY 51, ¶ 4, 110 P.3d 275, 277 (Wyo.2005); *Albrecht v. Zwaanshoek Holding En Financiering, B.V.,* 762 P.2d 1174, 1178 (Wyo.1988). The court rule governing joinder is found at W.R.C.P. 19:

(a) *Persons to be joined if feasible.*—A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties; or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) *Determination by court whenever joinder not feasible.*—If a person as described in subdivisions (a)(1) and (a)(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:

(1) To what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;

(2) The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

(3) Whether a judgment rendered in the person's absence will be adequate;

(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

. . . .

[¶ 17] In addition to this provision in the court rules, the lien statutes provide a mechanism for making a contractor such as Newpoint a party in a lien foreclosure action brought by a subcontractor such as Elkhorn against an owner such as KM:

The contractor shall defend any action brought by his employee, subcontractors hired by the contractor, their employees or by any suppliers of materials provided under contract in accordance with this chapter at his own expense. During the pendency of the action the owner or his agent may withhold from the contractor the amount of money for which a lien is filed. If judgment is rendered against the owner or his property on the lien foreclosure, he may deduct from any amount due to the contractor the amount of the judgment and costs. If the owner has paid the contractor in full he may recover from the contractor any amount paid by the owner for which the contractor was originally liable.

Wyo. Stat. Ann. § 29-2-108 (LexisNexis 2007).

■ [¶ 18] Before we discuss this law, and the issue of indispensable parties, we must make a point. This is not a question of the effect of the district court's denial of a motion to join Newpoint as an indispensable party. As noted above, after KM filed two motions to add Newpoint, Inc., as a party defendant, KM and Elkhorn stipulated to such joinder, and an order was entered to that effect. *See supra* ¶ 7. Elkhorn's complaint was amended, Newpoint, Inc. answered, and filed a counterclaim against

Elkhorn and a cross-claim against KM. *See supra* ¶¶ 7, 8. Both Elkhorn and KM responded to Newpoint, Inc.'s claims. Subsequently, the district court was notified that Newpoint, Inc. had filed for bankruptcy protection in Oklahoma, and the question of the applicability of the bankruptcy stay, discussed above, arose. *See supra* ¶ 12. Consequently, the limited issue now before us is whether the district court abused its discretion in failing to stay or dismiss the entire case because of Newpoint, Inc.'s non-participation, a question not much different from the one just answered.

■ [¶ 19] We believe that the district court's concurrent entry of its two orders—one granting summary judgment to Elkhorn against KM on the limited issue of the lien foreclosure, and one staying all proceedings that in any way affected Newpoint's rights and obligations—was precisely what was intended by the automatic bankruptcy stay, by the lien statutes, and by the court rule governing indispensable parties. We begin by noting the purpose of the lien statutes, which is "to create a means of securing the claims of a particular class of creditors and to prevent unjust enrichment arising out of the enhancement of value of property from labor and materials which would otherwise go without payment." *Engle v. First Nat'l Bank of Chugwater*, 590 P.2d 826, 830 (Wyo. 1979). Allowing the insolvency or bankruptcy of the contractor to defeat the lien claim of a subcontractor would, of course, thwart that purpose. That reasoning is reflected in W.R.C.P. 19(a), (b)(4), which directs the district court, in determining "whether in equity and good conscience the action should proceed among the parties before it" when an "indispensable" party cannot be joined, to consider "[w]hether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." In addition, W.R.C.P. 19(a) makes it clear that a person should not be joined as a party under the rule if "joinder will [ ] deprive the court of jurisdiction over the subject matter of the action. . . ." Clearly, the intent of the rule is that it not be used to prevent adjudication of claims between par-

ties where that adjudication can be accomplished, as here, in the absence of the allegedly indispensable party. Newpoint, the contractor, does not need to be present in this lawsuit for Elkhorn, the subcontractor, to foreclose its lien against KM, the owner. *Hamel,* 713 P.2d at 1154.

[¶ 20] Without doubt, Wyo. Stat. Ann. § 29-2-101 was "incorporated in the lien laws for the owner's protection, and the owner has a clear right to insist that the contractor be made a party." *Hamel,* 713 P.2d at 1154. We have previously noted, however, that this right is only the right to have the contractor made a party if such "is possible." *True,* 577 P.2d at 1005. This is consonant with the introductory language to W.R.C.P. 19(a), which indicates that persons are to be joined under the rule "if feasible," and to the body of the rule, which contains several exceptions to joinder where such could defeat the underlying action: person not subject to service of process, subject matter jurisdiction would be destroyed, or venue would be rendered improper. *See Hoiness–LaBar Ins. v. Julien Constr. Co.,* 743 P.2d 1262, 1269 (Wyo.1987) (not indispensable party if not subject to service of process). It is also consonant with the fact, noted above, that inclusion of an indispensable party is a discretionary decision, not one made as a matter of law. *See American Beryllium & Oil Corp. v. Chase,* 425 P.2d 66, 68 (Wyo.1967) (no fixed rule determines whether person with interest is an indispensable party; rather, peculiar facts of case are determinative). The general rule has been described as follows:

> Parties are indispensable only when their interest in the controversy is such that a final decree cannot be made without either affecting that interest or leaving the controversy in such condition that its final disposition may be inconsistent with equity and good conscience. An "indispensable party" is one whose interest is such that a final decree cannot be entered without affecting that interest or in whose absence the controversy cannot be terminated. A person is an indispensable party only when

the judgment to be rendered necessarily must affect his or her rights. A party becomes an indispensable party if the party has an interest relating to the subject of the action and is so situated that the disposition of the action in the party's absence may as a practical matter impair or impede the party's ability to protect that interest. An indispensable party is one whose interest in the controversy makes it impossible to completely adjudicate the matter without affecting either that party's interest or the interests of another party in the action. A party is indispensable when his or her rights are so connected with the claims of the litigants that no degree can be made without impairing those rights. The absence of an indispensable party prevents a court from granting relief. However, the doctrine of indispensability is not jurisdictional.

> A person who has no interest in the controversy between the parties to the action is not an indispensable party. Persons who might conceivably have an interest in the outcome of litigation are not to be considered indispensable parties. Every person who has any interest in a controversy or subject matter of a suit that is separable from the interest of the other parties before the court, so that it will not necessarily be directly or injuriously affected by a decree that does complete justice between them, is a proper party to the suit but is not an indispensable party.

59 Am.Jur.2d *Parties* § 10 (2d ed. 2012).

[¶ 21] A mechanic's lien foreclosure, in the context of the case *sub judice,* is a statutory procedure that allows a subcontractor to obtain from the property the reasonable value of the labor and materials put into that property. It has the joint equitable goals of preventing unjust enrichment and providing restitution. *Horseshoe Estates v. 2M Co.,* 713 P.2d 776, 779 (Wyo.1986); *Engle,* 590 P.2d at 830. Perhaps it could be said that the usual necessity for a subcontractor establishing a lien and seeking to foreclose it is that the contractor did not pay for the subcontractor's services. Allowing the owner

to hide behind the contractor's bankruptcy would render the statutory lien process nugatory. The legislative policy behind the lien statutes is clear—the parties providing the labor and materials are to be paid where possible.[6]

[¶ 22] In its final argument in regard to this issue, KM cites *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999–1001 (4th Cir. 1986) for the proposition that Newpoint is an indispensable party because KM is entitled to "absolute indemnity" from Newpoint. In response, Elkhorn distinguished *A.H. Robins* from the instant case by pointing out that in the latter the question of indemnity is not at all clear, and that matter remains to be resolved between KM and Newpoint in the bankruptcy. We agree with Elkhorn. The contingent nature of any indemnification claims simply renders them too remote to justify staying these state lien foreclosure proceedings and transferring the entire matter to the bankruptcy court. *Ni Fuel Co. v. Jackson*, 257 B.R. 600, 616 (N.D.Okla.2000). In turn, allowing these proceedings to continue will not affect the indemnity claims involving the bankrupt entity and the bankruptcy estate:

> [If] the state court action [is] permitted to proceed, that state court action will not determine whether or not a right to indemnification exists. The state court action would only determine liability and damages on the claims before the state court. Whether or not a claim for indemnity can be brought against the bankrupt debtors is a decision left for the bankruptcy court.

*Id.* This is precisely what has happened in the instant case. The district court maintained jurisdiction over the statutory lien foreclosure, and then stayed the balance of the proceedings for resolution in the bankruptcy court. That was the correct course of action.

6. This policy does not create a necessarily unfair relationship. An owner has the right to require a contractor to provide lien waivers from subcontractors before paying the contractor, and the right to require payment and performance bonds from the contractor. *See, e.g., Miller v. State*, 732

***Did the district court err in granting summary judgment in the absence from this case of HFG Engineering US, Inc. (HFG), an alleged joint venturer with Newpoint, and therefore an indispensable party?***

[¶ 23] About two years into this lawsuit, KM filed a motion to join HFG as an additional defendant, arguing that HFG was a joint venturer with Newpoint, and therefore was an indispensable party. KM's theory was that, as a joint venturer with Newpoint, HFG was liable for Newpoint's contractual obligations, including indemnity. Elkhorn opposed the joinder motion, principally on three grounds: that the motion was untimely, that as a matter of law Newpoint and HFG were not joint venturers, and that a mandatory arbitration clause in the contract between KM and HFG would compel arbitration of any claims between them.

[¶ 24] Our resolution of the joinder issue as it applies to Newpoint allows us to determine this issue without further discussion. Resolution of Elkhorn's statutory lien claim does not require resolution of the question of whether Newpoint and HFG were joint venturers, and does not require resolution of any potential indemnification issues among KM, HFG, and Newpoint. All of those questions are more properly questions for the bankruptcy court, and the stay entered in this case by the district court accomplishes that goal. The district court did not err in granting summary judgment in the absence of HFG.

***Did the district court err in finding no genuine issues of material fact?***

[¶ 25] We have repeatedly stated our standard for reviewing summary judgments. The following is an apt rendition of that standard given the issues presented in this case:

> We evaluate the propriety of a summary judgment by employing the same stan-

P.2d 1054, 1058 (Wyo.1987) and *Wyo. Mach. Co. v. United States Fidelity & Guar. Co.*, 614 P.2d 716, 724 (Wyo.1980). *See also* 17 Am.Jur.2d *Contractors' Bonds* §§ 1, 2 (2004); and 51 Am. Jur.2d *Liens* § 59 (2011).

dards and using the same materials as the district court. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006). Thus, our review is plenary. *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 7, 75 P.3d 640, 647 (Wyo. 2003).

> Wyo. R. Civ. P. 56 governs summary judgments. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). When reviewing a summary judgment, we consider the record in the perspective most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. We review questions of law *de novo* without giving any deference to the district court's determinations.

*Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 11, 123 P.3d 579, 587 (Wyo.2005), quoting *Baker v. Ayres and Baker Pole and Post, Inc.*, 2005 WY 97, ¶ 14, 117 P.3d 1234, 1239 (Wyo.2005).

> "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Christensen v. Carbon County*, 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo.2004) (quoting *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002)). The party requesting a summary judgment bears the initial burden of establishing a *prima facie* case for summary judgment. If he carries his burden, "the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists." *Id.* We have explained the duties of the party opposing a motion for summary judgment as follows:

> > "After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings ..., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden."

> The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact.

> *Cook*, ¶ 12, 126 P.3d at 890, quoting *Jones v. Schabron*, 2005 WY 65, ¶¶ 9–11, 113 P.3d 34, 37 (Wyo.2005).

*Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶¶ 8–9, 148 P.3d 8, 12–13 (Wyo.2006).

[¶ 26] As mentioned earlier herein, the target price in the Newpoint–Elkhorn contract was $5,700,000. Nevertheless, Newpoint approved Elkhorn invoices totaling $9,910,086.96. Newpoint paid Elkhorn $4,829,498.13. Eventually, Elkhorn filed the Lien Statement that is the subject of this controversy, to which were attached copies of unpaid but Newpoint-approved invoices totaling $4,880,588.83. At the hearing upon the parties' summary judgment motions, Elkhorn conceded that there were genuine issues of material fact concerning certain invoices totaling $181,369.00, leaving a balance of $4,699,219.83. That was the amount awarded to Elkhorn in its foreclosure claim.

[¶ 27] Elkhorn supported its summary judgment motion with nine attachments. Exhibit A consisted of excerpts from the deposition testimony of Zane Rhodes, president of Newpoint, Inc. The following colloquy occurred during the deposition after Rhodes described the process whereby Newpoint, Inc. authorized Elkhorn's invoices:

Q. And the approval connoted acceptance that it was agreeable to be paid, right?

A. Correct.

Q. And as far—it was Newpoint's position that this format or form of billing provided enough information to comply with Elkhorn's requirements under the contract, right?

A. Correct.

Q. This is fairly standard time and material billing, right?

A. Correct.

After further testifying that some invoices were approved in the field, and some were approved in Newpoint's offices, Rhodes testified that the amounts were due and owing, and that the Elkhorn invoices were "used by Elkhorn to improve Kinder Morgan's property."

[¶ 28] Attached to Elkhorn's summary judgment motion as Exhibit D are excerpts from the deposition of Cole Deister, Elkhorn's project representative, who described in detail the construction problems that resulted in Elkhorn's extra work on the project. Exhibit F contains copies of numerous deposition exhibits, including the Time and Material Contract between Newpoint and Elkhorn, Elkhorn's bid documents, rate sheets, e-mails about construction problems, invoices, discovery responses, the KM/HFG contract, and the KM/Newpoint contract. Exhibit H consisted of an affidavit and a chart comparing the number of laborers Elkhorn had expected to work on the project with the larger number of laborers actually required. In further support of its summary judgment motion, Elkhorn submitted to the district court a brief summarizing these exhibits and laying the blame for the construction problems and additional costs squarely upon the failures of HFG, particularly in the untimely delivery of engineering drawings.

[¶ 29] KM filed its own summary judgment motion, a memorandum of law in support of that motion, and a response to Elkhorn's motion. KM raised three contentions as to the existence of genuine issues of material fact: (1) whether Elkhorn is entitled to the amount it claims, (2) who was responsible for the cost overruns, and (3) whether the amount of Elkhorn's lien claim is reasonable. In regard to those specific contentions, we note the following information contained in KM's materials. First, the head of KM's project management group states in an affidavit that, to the best of his knowledge, the target price established in the Newpoint/Elkhorn contract was never increased in writing. Next, KM notes that it approved only two change orders for the project, one increasing its contract price with Newpoint by $15,090.30, and the second increasing its contract price with Newpoint by $16,275.00. In addition, portions of the transcript of the deposition of Elkhorn's project representative reveal that Elkhorn obtained no written change orders from Newpoint. In short, KM first argues that Elkhorn never obtained an increase in its contract price in the manner required by the contract, and, therefore, is not entitled to any amount beyond the contract price.

[¶ 30] Elkhorn cites three Wyoming cases in rejecting this contention. Repeating its argument that HFG's failure timely to produce engineering drawings made it impossible for Newpoint and Elkhorn to determine a new target price under their contract, Elkhorn quotes *Mortenson v. Scheer*, 957 P.2d 1302, 1306 (Wyo.1998) as follows:

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

(Quoting Restatement (Second) of Contracts § 261 (1979)). Next, noting that Newpoint and Elkhorn responded to the impossibility of identifying a new target price by modifying the contract price via Newpoint's approval of Elkhorn's invoices, Elkhorn points out the following language from *Schuler v. Community First Nat'l Bank*, 999 P.2d 1303, 1305 n. 1 (Wyo.2000):

As a general rule, if the parties mutually adopt a mode of performing their contract differing from its strict terms or if they mutually relax the contract's terms by adopting a loose mode of executing them, neither party can go back upon the past and insist upon a breach because the contract was not fulfilled according to its letter. *Quin Blair Enterprises, Inc. v. Ju-*

*lien Constr. Co.,* 597 P.2d 945, 951 n. 6 (Wyo.1979).

See also *Huang Int'l, Inc. v. Foose Constr. Co.,* 734 P.2d 975, 978 (Wyo.1987) (habitual disregard of provision requiring written change orders can amount to waiver of the requirement).

[¶ 31] We agree with Elkhorn and the district court that the altered method of contract pricing, that being Newpoint's periodic approval of Elkhorn's invoices, rather than a one-time amendment to the target price, does not take those charges outside the parties' contract, or negate Elkhorn's entitlement to payment. There is no genuine issue of material fact as to that proposition.

[¶ 32] KM next asserts that a genuine issue of material fact remains as to who was responsible for the cost overruns. The suggestion, of course, is that Elkhorn should not be allowed to benefit from extra expenses that it was at fault for causing. In maintaining that it has proven that Elkhorn was not responsible for the additional costs, Elkhorn relied upon the attachments to its Lien Statement and the exhibits mentioned above that were attached to its summary judgment motion. In response, KM points to two Newpoint e-mails that call Elkhorn's performance into question. On December 22, 2008, Newpoint's CEO, Wiley Rhodes, informed Elkhorn that despite the good intentions of Elkhorn, HFG, and Newpoint, "we all fell short of our original goal." In an internal e-mail dated about three months later, Newpoint, LP's Project Manager, Cathy Torregano, identified what she believed to be contract breaches by Elkhorn: failure adequately to schedule and manage project activities, failure to submit written notices of discrepancies, failure to document actual installation, failure to "redline" civil, mechanical and electrical drawings, failure to generate accurate lists to procure required materials, failure to use expedited materials within 30 days, and failure to know what was needed to finish the job despite continuous reorders. Finally, KM attached to its response to Elkhorn's summary judgment motion an affidavit and lengthy expert report entitled "Analysis of Claimed Damages related to West Frenchie Draw Treating Plant Fremont County, Wyoming."

[¶ 33] Before we further analyze KM's assertion that a genuine issue of material fact exists in regard to who caused the project's cost overruns, we think it prudent first to discuss KM's third allegation—that is, that genuine issues of material fact exist in regard to whether the amount of Elkhorn's claimed lien is reasonable. We begin with the proposition that the correct measure of compensation under a mechanic's lien, rather than being the enhanced value of the owner's property, is the value of the materials and services supplied by the mechanic or materialman. *Horseshoe Estates,* 713 P.2d at 778–79; *Engle,* 590 P.2d at 830. Of particular note because of the parties' relations in the instant case is our stated principle that, where there is no contract between the owner and a subcontractor, the correct measure of compensation under a lien filed by that subcontractor against the owner is the reasonable value of the labor and materials furnished. *United Pacific Ins. Co. v. Martin & Luther Gen. Contractors, Inc.,* 455 P.2d 664, 669 (Wyo.1969). Furthermore, both the cost of the goods and services supplied, and the contract price, are "admissible on the issue of reasonable value and constitutes prima facie proof of the issue." *Id.* (quoting *Lenslite Co. v. Zocher,* 95 Ariz. 208, 388 P.2d 421, 424 (1964)).

[¶ 34] In the end, we conclude that Elkhorn presented a *prima facie* case in support of its motion for summary judgment, and that KM did not in response present specific facts showing the existence of genuine issues of material fact. Through affidavits, deposition testimony, contracts, bid documents and rate sheets, and, above all, proof that Newpoint had approved all of the subject invoices, Elkhorn met its burden of making a *prima facie* showing that it provided the labor and materials underlying the lien statement, and that the total amount was reasonable.

[¶ 35] KM misapprehends its obligation in resisting Elkhorn's summary judgment motion. It is not sufficient, for instance, to suggest that Elkhorn may have been responsible for some of the cost overruns. Speculation is not evidence. Furthermore, KM's

reliance upon the contention that Elkhorn and Newpoint did not, in writing, increase the "target price" in their contract is without merit. As noted elsewhere herein, Elkhorn and Newpoint mutually agreed upon a different process to determine the contract price— that process being Newpoint's review and approval of invoices submitted by Elkhorn as the work progressed. In short, Elkhorn documented the work done on KM's property under the Newpoint contract, provided the testimony of its construction representative as to the construction problems that caused additional work, and showed that the contractor had approved the work done by and the amounts owed to Elkhorn. It was not error for the district court to conclude that there were no genuine issues of material fact in regard to these matters.

### Did the district court err in awarding summary judgment in an amount exceeding the contract price where Wyo. Stat. Ann. § 29–2–101(b) (LexisNexis 2007) requires that the work or materials establishing a mechanic's lien be furnished under a contract?

[¶ 36] Wyo. Stat. Ann. § 29–2–101(b) (LexisNexis 2007), which is part of the "Contractors or Materialmen" lien statutes, provides that "[t]o have a lien the work or materials shall be furnished under a contract." KM interprets this language to mean that, not only must there be a contract supporting the lien claim, but the lien claim may not exceed the stated contract price. KM then reasons that, because Elkhorn's Lien Statement itemized amounts beyond the original "target price" in the Elkhorn–Newpoint contract, Elkhorn's lien is invalid.

[¶ 37] We will reject KM's contention with little comment. We note that, although

KM cites to numerous cases recognizing the statutory contract requirement, KM does not cite a single case holding that the statutory language "caps" the lien amount at the original contract price.[7] It could just as well be that the contract requirement exists not to limit the lien amount, but to insure that the owner has notice of the potential for a lien filing. We need not consider that question here, however, because the evidence presented to the district court clearly showed, as discussed above, that the claimed lien amount had been approved under the Newpoint–Elkhorn contract by the conduct of the parties. The judgment granted did not exceed the contract price.

### Did Elkhorn's Lien Statement set forth both a mechanic's lien claim and an oil and gas lien claim?

[¶ 38] Title 29 of the Wyoming Statutes is entitled "Liens."[8] Title 29 is divided into eight chapters, the first three of which are pertinent to this discussion. Chapter 1 is entitled "General Provisions." Chapter 2 is entitled "Contractors or Materialmen." Chapter 3 is entitled "Mines, Quarries, Oil, Gas or Other Wells." At the risk of stating the obvious, we will note that Chapter 1 applies to all liens governed by Title 29, "mechanic's" liens are governed by Chapter 2, and oil and gas liens are governed by Chapter 3.[9]

[¶ 39] Elkhorn filed only one Lien Statement, which reads in pertinent part as follows:

NOTICE is hereby given that pursuant to and in accordance with Section 29–1–301 et seq. and Section 29–3–101 et seq., Wyoming Statutes, 2007, Elkhorn Construction, Inc., whose mailing address is . . . , has and claims a lien against the **leasehold inter-**

---

7. KM cites *Opportunity Knocks Enterprises, LLC v. Shannon Electric, Inc.*, 2010 WY 99, ¶ 8, 236 P.3d 255, 258 (Wyo.2010) (contract price may include profit, overhead, and markups); *Engle v. First. National Bank of Chugwater*, 590 P.2d 826, 830 (Wyo.1979) (implied contract is sufficient); *Sargent v. Delgado*, 492 P.2d 193, 195 (Wyo.1972) (equitable owner may not create lien affecting legal owner's interest); and *United Pacific Insurance Co. v. Martin & Luther General Contractors, Inc.*, 455 P.2d 664, 669 (Wyo.1969) (amount of the lien is reasonable value of labor and materi-

als furnished, rather than value of improvement to the premises).

8. Once again, we will be referring to the statutes as they existed in 2007.

9. The term "mechanic's lien" encompasses the statutory lien rights of contractors, subcontractors, materialmen, and laborers. The common element is the provision of labor or materials for the improvement of real property. *See* 53 Am. Jur.2d *Mechanic's Liens* §§ 1, 2 (2006).

est **and improvements** hereinafter described and **all production of oil, gas, ore and minerals in solid form, or proceeds therefrom** in the amount of $4,880,588.83, plus interest, late charges, attorney's fees and costs from January 16, 2009, for materials furnished and delivered and labor supplied for the improvement of said property by Elkhorn Construction, Inc.

(Emphasis in original.)

[¶ 40] KM argues that, by referencing only § 29–1–301, which governs all lien statements as part of the general provisions of Chapter 1, and § 29–3–101, which governs oil and gas liens under Chapter 3, Elkhorn did not make a mechanic's lien claim under § 29–2–101, which is part of Chapter 2. Elkhorn contends, to the contrary, that use of the conjunctive "and" between the phrases describing leasehold interests and improvements, on the one hand, and oil and gas production, on the other, shows the intent of the Lien Statement to set forth both a mechanic's lien claim and an oil and gas lien claim. Further, Elkhorn argues that § 29–1–301(b), which lists the information that must be contained in all lien statements, does not require a reference to the particular statutory section under which the lien is being claimed. Finally, Elkhorn notes that it sent KM a notice of its intent to file a lien, as required by the mechanic's lien statutes, but not the oil and gas lien statutes, and that in its pleadings throughout the case, KM expressly recognized that Elkhorn had filed both a mechanic's lien and an oil and gas lien.

[¶ 41] We have said many times that statutory liens are in derogation of common law, that the lien statutes must be strictly construed, and that, to establish a valid lien, there must be full compliance with the statutes. *Foster Lumber Co. v. Hume*, 645 P.2d 1176, 1180 (Wyo.1982); *Tottenhoff v. Rocky Mountain Constr. Co.*, 609 P.2d 464, 466 (Wyo.1980); *American Bldgs. Co. v. Wheelers Stores*, 585 P.2d 845, 847 (Wyo.1978). At the same time, however, in recognition of the equitable principles underlying the lien statutes, we have also repeatedly found a lien to be valid even though it contained inadvertent inaccuracies or omissions that were not prejudicial. *See, e.g., Kirby Bldg. Sys. v. Inde-*

*pendence P'ship No. One*, 634 P.2d 342, 346 (Wyo.1981); *Engle*, 590 P.2d at 830–32; *United Pacific*, 455 P.2d at 673–76; *Phelan v. Cheyenne Brick Co.*, 26 Wyo. 493, 188 P. 354, 358 (1920).

[¶ 42] In the instant case, KM does not claim to be prejudiced by Elkhorn's omission from its Lien Statement of a specific reference to Wyo. Stat. Ann. § 29–2–101. Rather, KM simply argues that, because of that omission, Elkhorn did not file a mechanic's lien. That position is inconsistent with the position that KM took during the proceedings in district court. For instance, in a reply filed on July 16, 2009, in support of its motion to dismiss Elkhorn's oil and gas lien foreclosure claim, KM made the following statement:

Elkhorn's purpose of filing both § 29–3–103 and § 29–2–101 liens is therefore revealed—because a § 29–2–101 contractor's lien appears most applicable under the facts presented, Elkhorn has chosen to not only file a lien under that section, but to also attempt to impermissibly acquire a lien against the hydrocarbon production being treated by the Amine Plant under § 29–3–101.

[¶ 43] We find that the Lien Statement is sufficiently clear in its intent to state both a mechanic's lien and an oil and gas lien. It certainly cannot be said that, as a matter of law, the language is statutorily inadequate, and it is clear from the record that KM was not mislead and suffered no prejudice. While the lien statutes, themselves, are to be strictly construed, and while compliance with their mandates is required, it would defeat the equitable purposes behind the statutes— to create a means of payment for labor and materials that might otherwise go unpaid— were we to find invalid every lien that contained any discrepancy or omitted any information, whether or not material.

***Did the district court err in concluding that Elkhorn's damages were liquidated and awarding pre-judgment interest?***

[¶ 44] In its summary judgment order, the district court awarded Elkhorn prejudgment interest at the statutory rate of seven percent per annum. In considering the rectitude of prejudgment interest in this case, the parties have not suggested what

our standard of review should be, other than treating the matter as part of the summary judgment. We have previously stated that the question of whether a judge *is entitled to* award prejudgment interest in a particular case is a question of law that we review *de novo*, while the question of whether prejudgment interest *should be* awarded is reviewed for an abuse of discretion. *Stewart Title Guar. Co. v. Tilden*, 2008 WY 46, ¶ 21, 181 P.3d 94, 102 (Wyo.2008); *Millheiser v. Wallace*, 2001 WY 40, ¶ 13, 21 P.3d 752, 756 (Wyo.2001); *Bueno v. CF & I Steel Corp.*, 773 P.2d 937, 940 (Wyo.1989).[10] As will be seen in the ensuing discussion, the issue at hand is of the former type, and therefore the review is *de novo*. Generally stated, the disputed question is whether the claims supporting the Lien Statement meet this Court's criteria for consideration of an award of prejudgment interest.

[¶ 45] Prejudgment interest is awarded in the appropriate case under the doctrine of unjust enrichment, as damages for the lost use of money. *Pennant Serv. Co. v. True Oil Co.*, 2011 WY 40, ¶ 36, 249 P.3d 698, 711 (Wyo.2011); *State v. BHP Petroleum Co.*, 804 P.2d 671, 673 (Wyo.1991). This doctrine is applicable where a lien is being foreclosed, because the loss of use of money is part of the claimant's damages, and an award of interest may be necessary "to avoid an injustice." *Horseshoe Estates*, 713 P.2d at 782. Prejudgment interest is available if a two-part test is met: (1) the claim must be liquidated, as opposed to unliquidated, meaning it is readily computable via simple mathematics; and (2) the debtor must receive notice of the amount due before interest begins to accumulate. *Bowles v. Sunrise Home Ctr., Inc.*, 847 P.2d 1002, 1005–06 (Wyo.1993); *BHP Petroleum*, 804 P.2d at 673; *Holst v. Guynn*, 696 P.2d 632, 635 (Wyo.1985). Finally, this Court has repeatedly held that, in the absence of a con-

tractual agreement to a different percentage, the appropriate measure of prejudgment interest is the seven percent per annum stated in Wyo. Stat. Ann. § 40–14–106(e) (LexisNexis 2007). *See, e.g., O's Gold Seed Co. v. United Agri–Products Fin. Servs.*, 761 P.2d 673, 677 (Wyo.1988); *Holst*, 696 P.2d at 635; and *John Burk, P.C. v. Burzynski*, 672 P.2d 419, 424 (Wyo.1983).

[¶ 46] KM contends that Elkhorn's claim was not liquidated, and that, therefore, prejudgment interest was not available to be awarded to Elkhorn. The district court disagreed, finding the claim "readily computable by simple mathematical computation[.]" Further, the district court found that KM had received notice of the claimed amount on March 5, 2009, which was the date the Lien Statement was filed. We will affirm, in good part for the same reasons that we affirmed the district court's finding that there are no genuine issues of material fact and that summary judgment is appropriate. Attached to the Lien Statement were 1,260 pages of labor and materials invoices, detailing the labor and materials supplied toward KM's project, detailing the amounts owed to Elkhorn under those invoices, and reflecting Newpoint's assurance that the amounts were due and payable. "[A] mere difference of opinion as to the amount due or as to liability does not preclude prejudgment interest if the amount sought to be recovered is a sum certain and the party from whom payment is sought receives notice of the amount sought." *Wells Fargo Bank v. Hodder*, 2006 WY 128, ¶ 61, 144 P.3d 401, 421 (Wyo.2006).

### Did the district court err in finding that Elkhorn conceded that $181,369 of its claim was not valid, and by subtracting that amount from Elkhorn's judgment?

[¶ 47] This issue was raised by Elkhorn in its cross-appeal. The matter can quickly

10. *See also Amoco Prod. Co. v. EM Nominee P'ship Co.*, 2 P.3d 534, 543 (Wyo.2000) and *ANR Prod. Co. v. Kerr–McGee Corp.*, 893 P.2d 698, 704 (Wyo.1995), where the award of prejudgment interest in a conversion case was reviewed for an abuse of discretion, even though the prejudgment interest was not considered to be "interest" *per se. But see also contra. Goodwin v. Upper Crust of Wyo., Inc.*, 624 P.2d 1192, 1198 (Wyo.1981), where we reversed a denial of prejudgment inter-

est on the ground that the appellees "were entitled" to prejudgment interest, and prejudgment interest "should have been awarded," without indicating whether the reversal was due to an error of law or abuse of discretion. And more emphatically, in *Rissler & McMurry Co. v. Atlantic Richfield Co.*, 559 P.2d 25, 34 (Wyo.1977), we held that the appellant was "entitled as a matter of law" to prejudgment interest.

be resolved by reference to the record. During the summary judgment motion hearing, Elkhorn's counsel made the following comments:

Your Honor, the only area where we feel they raised a material issue of fact is their expert went through our liens and our claims and apparently all the discovery and everything—he's got a report about this thick. May I approach?

. . . .

This was the only thing, Your Honor, within that, and it was a citation in this page in Mr. Bright, their expert's report. And arguably, this is what you expect to see to raise material issues of fact. They claim that there was no authorization for completion bonuses in the purchase order. The rate differential, they disagreed with that because the contract provisions don't allow for it.

You know, these are five or six items that they have raised a material issue of fact on. These are concrete items that we can look at, we can examine, we can try this in two hours. I can tell you that they're wrong on all of them. I mean the completion bonuses are documented by e-mail. The rate differentials, when we were required to put on night shift, you've got to pay the guys an extra 50 cents. There's a building [sic] here for Working Horse Log Homes. They said the records don't indicate what was built. Well, if we get to trial, Mr. Deister here will testify that was to pay the Working Horse Log Homes Company to come over and spray sealant on concrete foundation.

Your Honor, in sum, we believe they've only met their burden of proof in creating a factual issue on our claim that's put inside all their technical lien arguments, Your Honor, for the sum total of this, of these items, which is $181,369. And we would request that the Court enter partial summary judgment in Elkhorn's favor in the amount of its lien claim of $4,880,588 and deduct from it the $181,369 depicted on that, and those are the issues of fact to

be tried, Your Honor. Those invoices will come in. We'll put on those, and we'll prove I believe that we're owed that money, also. So we're requesting partial summary judgment in favor of Elkhorn and against Kinder Morgan in the amount of $4,699,219 . . . .

[¶ 48] Based upon this limited concession, the district court stated in the summary judgment order that "[Elkhorn] agreed to deduct $181,369 from its original lien amount of $4,880,588.83 based on what it conceded to be legitimate issues raised by [KM], leaving the amount to be foreclosed at $4,699,219.83." The intent of this language is unclear. While stating that "the amount to be foreclosed [is] $4,699,219.83," the district court did not directly declare that the $181,369 was not owed. Rather, the court identified that sum as being subject to "legitimate issues." That suggests that, instead of eliminating Elkhorn's ability to recover the $181,369, the district court meant for that amount to be the subject of a bench trial. We will remand this matter to the district court for such proceedings.

### Did the district court err in holding that the allowed foreclosure of the mechanic's lien "mooted" the necessity for the district court to address Elkhorn's separate motion for summary judgment on the oil and gas lien claim?

[¶ 49] The district court concluded its summary judgment order with the following language: "based on the resolution of [Elkhorn's] mechanic's lien, the Court need not address [Elkhorn's] remaining claims." In its cross-appeal, Elkhorn takes the position that, by using this language, the district court "mooted" the issue of its oil and gas lien.[11] A reading of the entire order convinces us, however, that the district court did not necessarily intend to declare the issue of the oil and gas lien claim moot as a matter of law. Earlier in the order, for instance, after staying those issues related to the contractor, Newpoint, the district court declared that "I think that makes the rest of

---

11. "A case is moot when the determination of an issue is sought which, if provided, will have no practical effect on the existing controversy."

*Bard Ranch Co. v. Frederick,* 950 P.2d 564, 566 (Wyo.1997).

the agenda not moot, but we probably should wait until we get that sorted out as well." While it is not entirely clear from the context what the district court meant by "the rest of the agenda," the quoted passage follows soon after the district court commented to counsel about "how quickly you really do want to get back here on this field of battle...." It appears that the district court intended to bring the parties back to court to determine matters that had not been stayed by Newpoint's bankruptcy.

[¶ 50] An oil and gas lien claim is, of course, a creature quite unlike a mechanic's lien. First off, it applies to production and the proceeds of production, statutorily delineated means of production, and lands and leaseholds under particularized circumstances. Wyo. Stat. Ann. § 29-3-105 (Lexis-Nexis 2007). Because of those distinctions, it would not appear that a decision as to a mechanic's lien would necessarily make the issue of an oil and gas lien claim moot. In addition, under Wyo. Stat. Ann. § 29-3-103(a)(vi), a successful oil and gas lien claimant may recover attorney's fees and other costs of collection.

[¶ 51] Because of these distinctions, and other statutory distinctions between a mechanic's lien and an oil and gas lien, we do not believe that resolution of a claim as to the former makes moot a claim to the latter. This case must be remanded to the district court to determine the validity and amount of Elkhorn's oil and gas lien claim. The district court will have to determine in the first instance whether the record is sufficient for it to make such a determination as part of the determination of the motions for summary judgment, or whether a bench trial on the issue is necessary.

## CONCLUSION

[¶ 52] The automatic stay in the bankruptcy of the contractor, Newpoint, did not deprive the district court of jurisdiction to enter summary judgment in favor of the subcontractor, Elkhorn, in an *in rem* lien foreclosure action against the owner. Furthermore, because the lien foreclosure was an *in rem* proceeding not requiring the presence in the case of either Newpoint or HFG, the district court did not err in proceeding in their absence. Elkhorn presented a *prima facie* case in support of its motion for summary judgment, and KM's argumentative and speculative response did not prove the existence of genuine issues of material fact, making summary judgment appropriate. The labor and materials supporting the mechanic's lien claim were furnished under a contract and did not exceed the time and materials contract price, as determined by the conduct of the parties. Elkhorn's Lien Statement set forth both a mechanic's lien claim and an oil and gas lien claim. Prejudgment interest was an appropriate part of the damage award in the summary judgment order because Elkhorn's claim was a liquidated claim in the sense that it was readily determinable by simple mathematical computations. The district court did not determine that $181,369 of Elkhorn's lien claim was not valid; rather the district court determined that $181,369 of Elkhorn's lien claim was disputed, meaning that such requires remand and resolution in the district court. Resolution of the mechanic's lien claim in favor of Elkhorn did not make moot the issues of the validity and amount of Elkhorn's oil and gas lien claim.

[¶ 53] Affirmed in part and reversed in part and remanded to the district court for further proceedings consistent herewith.